UNITED STATES of America,
Plaintiff-Appellee,

v.

Daniel James POWELL,
Defendant-Appellant.

No. 77-3846.

United States Court of Appeals,
Ninth Circuit.

Dec. 6, 1978.

Barry Tarlow (argued), Los Angeles, Cal., for defendant-appellant.

Stephen G. Nelson, Asst. U. S. Atty. (on the brief), Michael H. Walsh, U. S. Atty., Stephen G. Nelson, Asst. U. S. Atty. (argued), San Diego, Cal., for plaintiff-appellee.

Before ELY and HUFSTEDLER, Circuit Judges, and KRAFT,* District Judge.

* Honorable C. William Kraft, Jr., Senior United States District Judge, Eastern District of Pennsylvania, sitting by designation.

HUFSTEDLER, Circuit Judge:

Powell appeals from his conviction for conspiracy to possess marihuana with intent to distribute it in violation of 21 U.S.C. §§ 841, 846. He contends that the district court prejudicially erred (1) in denying a brief continuance to enable him to obtain the appearance of a material witness, (2) in denying an evidentiary hearing in connection with his challenge to the validity of a search warrant directed to the home of an alleged co-conspirator, (3) in admitting, over objection, Powell's two prior convictions and a marihuana-smoking incident. We reverse the conviction for prejudicial errors in admitting the prior convictions, permitting proof of the marihuana-smoking episode, and in denying the continuance to permit the appearance of a material witness.

## I

The Government's case rested on the testimony of Cheryl Sullivan, who identified Powell as the source for large quantities of marihuana that had been found in the residence she occupied with her paramour, Mark Stanley. Bolstering Sullivan's credibility was not an easy task. She had theretofore been convicted of a felony for possessing with intent to distribute the marihuana found in her garage. She had never made any statement implicating Powell during the period of more than three and one-half years from the date of her arrest until, following the affirmance of her conviction on appeal, she was faced with serving a five-year prison term. She then had strong motivation to cooperate with the Government by naming a person as the source. Powell was a likely candidate because he had been closely associated with Stanley and he had two prior convictions for marihuana trafficking.

In December, 1969, Powell and his brother sold three kilos of marihuana to California undercover narcotics agents, offenses for which both Powells were convicted. In January, 1973, Powell was arrested in a house in Chula Vista, California, in which was found 334 pounds of marihuana in the basement and 222 pounds of marihuana in the garage. He pleaded guilty to possession of marihuana with intent to distribute, and he was granted probation.

The key issue in this case was whether Powell supplied the marihuana that was found in Sullivan's garage. According to her testimony, Powell, Sullivan, and Stanley agreed to go into the marihuana business together in April, 1973. Under their agreement, Powell supplied money to Stanley and Sullivan to locate a safe storage house in the northern San Diego area. Powell supplied the marihuana, Stanley and Sullivan warehoused the merchandise, Stanley distributed it, and Sullivan kept the books. Sullivan and Stanley's roles in marihuana traffic were not contested. Both of them had been convicted for these very acts. Thus, the only real question was whether the marihuana that Stanley and Sullivan were vending came from Powell, rather than someone else. The major problem with Sullivan's identification of Powell as the source was her failure to make any statement implicating Powell for more than three and one-half years after her arrest.

Her explanation for her years of silence was a rather elaborate plot involving Powell, his lawyer, her own lawyer, and Stanley. She claimed that she had identified Powell as the source to her lawyer, who advised her against revealing Powell's identity as a part of a trial strategy developed by a "team," consisting of Powell, Stanley, Sullivan, Powell's lawyer, and Sullivan's lawyer. She testified that Powell arranged for her seeing his lawyer and that Powell had paid part of the legal fees for both her and Stanley. Powell's lawyer referred her to another lawyer. Powell's lawyer, testified, contradicting Sullivan's testimony on every point that involved him. He denied that Sullivan ever told him the source of the marihuana, and he said that he never told her to keep quiet. He testified that he had advised her to plead guilty. He also said that there was never any team of which he was a part.

When Sullivan testified about her lawyer's claimed complicity in a scheme to protect

Powell and herself, defense counsel claimed surprise. Defense counsel immediately tried to reach Sullivan's lawyer, who had practiced law in San Diego. The prosecutor knew that Sullivan would implicate her lawyer and he also knew that Sullivan's lawyer was then in the South Pacific. After Sullivan's and Powell's lawyer testified on Friday, September 9, 1977, defense counsel located Sullivan's lawyer in the Eastern Caroline Islands. Sullivan's lawyer agreed to return to testify, but he needed four days to make the trip. Defense counsel moved for a continuance to obtain Sullivan's lawyer's testimony. We know from affidavits submitted in support of Powell's new trial motion that Sullivan's lawyer would have testified that Sullivan had never told him that she knew the source of the marihuana, that he had never advised her to remain silent to protect Powell or anyone else, and that her testimony concerning a conspiracy to obstruct justice was a complete fabrication. The district court denied the continuance on the ground that Sullivan's lawyer's testimony was not critical enough to justify a delay in the trial because Powell's lawyer had already contradicted much of Sullivan's testimony.

Powell testified in his own defense denying any involvement in marihuana traffic with Sullivan and Stanley. He said that Stanley was a good friend with whom he frequently made skin diving and fishing trips. No further elaboration of the testimony is necessary to dispose of the appeal.

## II

On February 9, 1977, a superseding indictment was filed against Powell, Powell's brother, Stanley, and Sullivan who was named as an unindicted co-conspirator. Count 1 charged all four defendants with conspiracy to possess marihuana with intent to distribute, and count 2 charged them with possessing marihuana with intent to distribute. Powell was acquitted on the second count charging possession, but convicted on the first count charging conspiracy.

In pretrial motions, Powell sought an evidentiary hearing to challenge the veracity of an affidavit filed in support of the search warrant issued to search the Sullivan-Stanley residence. The information contained in the affidavit to support the search warrant was received from a confidential informant. The Government refused to disclose the identity of the informant on the ground that disclosure of the information would seriously imperil the informant's safety. The district court conducted *in camera* interviews with the informant and scrutinized the informant's entire FBI file. From that procedure, the court concluded that disclosure of the informant's identity or other informant discovery would not enable the defendants to make a required *prima facie* showing of substantial falsehood. Therefore, the district court refused to compel revelation of the informant's identity and also refused to permit an evidentiary hearing to challenge the affidavit in support of the search warrant.

Under *Brown v. United States* (1973) 411 U.S. 223, 93 S.Ct. 1565, 36 L.Ed.2d 208 and *Jones v. United States* (1960) 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697, Powell had automatic standing to challenge the validity of the search of the garage because one of the counts of the indictment charged him with "an offense that includes, as an essential element of the offense charged, possession of the seized evidence at the time of the contested search and seizure." (*Brown v. United States, supra,* 411 U.S. at 229, 93 S.Ct. at 1569.) Despite the holdings of *Brown* and *Jones,* however, our court has held that an acquittal on the possession charge, forecloses a defendant from arguing on appeal that he had standing initially to challenge the search and seizure. Solely under the compulsion of *United States v. Prueitt* (9th Cir. 1976) 540 F.2d 995, we must deny standing to Powell to challenge the search of the Stanley-Sullivan residence because the only count upon which he was convicted was the conspiracy count.[1] Because we hold that

---

1. Judge Hufstedler adheres to the views that she expressed dissenting in *United States v. Prueitt, supra,* 540 F.2d at 1006, but she recognizes that the law of the Circuit is stated in the majority opinion.

Powell lacks standing to challenge the search warrant, it is unnecessary to reach any of the issues raised by Powell in attacking the validity of the warrant.

### III

■ The district court has broad discretion in granting or denying a continuance to procure the presence of an absent witness, and the district court's decision on that question must not be disturbed in absence of an abuse of discretion. (*Isaacs v. United States* (1895) 159 U.S. 487, 16 S.Ct. 51, 40 L.Ed. 229; *United States v. Thompson* (9th Cir. 1977) 559 F.2d 552.) The district court denied the continuance on the ground that Sullivan's lawyer's testimony would be primarily cumulative because Powell's lawyer had contradicted much of Sullivan's testimony, and the probative value of any testimony that Sullivan's lawyer could give would be outweighed by the inconvenience attendant upon a continuance of the trial. The testimony of Sullivan's lawyer was not merely cumulative. His denial that Sullivan told him that Powell was the supplier was testimony that was directly relevant to the only seriously contested issue in the case. Powell's lawyer, of course, could not refute those portions of Sullivan's testimony directed to her conversations with her lawyer to which Powell's lawyer was not a party.

The Government argues that the defense request for a continuance was untimely because defense counsel could have moved for a continuance as soon as Sullivan's testimony implicating her lawyer had been given on Wednesday, September 7, 1977. Moreover, the Government argues, the district court did not have any assurance that a brief continuance would permit the witness to be produced. These arguments are not only disingenuous, but, under the circumstances of this case, are unbecoming to the Government.

The prosecutor in charge of this case had known for months that Sullivan's lawyer was in the South Pacific working on a special assignment for the Attorney General.

He knew that defense counsel had been unsuccessful in attempting to interview Sullivan. He also had known for at least a week before Sullivan testified that she was going to make serious charges against her lawyer, implicating him in criminal activity in allegedly protecting Powell, pursuant to a conspiracy. In representations to the district court, during the proceedings for the continuance, the prosecutor represented that Sullivan's lawyer was "an Air Force ace," a "terrific person," and "a great guy," and that he "frankly thought [Sullivan's lawyer] wouldn't involve himself in that." The prosecutor also knew that Sullivan had strong motivation to name a person as her source in order to mitigate her own punishment. In short, the prosecution knew that there was a real possibility that the Government's star witness would perjure herself. Despite that knowledge, the prosecutor did not reveal to counsel or to the court that Sullivan's lawyer was out of the country until defense counsel had made that discovery for himself and had finally succeeded in tracking Sullivan's lawyer to the South Pacific. Here, as in *United States v. Kelly* (2d Cir. 1969) 420 F.2d 26, 29, "[t]he course of the government smacks too much of a trial by ambush . . . ." Under these circumstances, the prosecutor's "lack of candor [is] unworthy of a prosecutor." (*United States v. Baum* (2d Cir. 1973) 482 F.2d 1325, 1332.)

We think that the inability of defense counsel to secure the testimony of Sullivan's lawyer at the trial was a miscarriage of justice, which requires a new trial.

### IV

Before trial, the Government gave notice that it intended to offer proof of the 1969 and 1973 convictions of Powell. The Government claimed that these prior convictions were admissible on three theories of relevance: intent, plan (design, *modus operandi*), and motive, applying Federal Rule of Evidence 404(b). The district court correctly rejected the evidence for the purpose of proving intent or plan.

■ The basic criterion is that the evidence of other crimes must be relevant to prove an issue in the case. The only factual issue in this case was identity of the source of the marihuana stored in Sullivan's garage. Powell did not purport to controvert intent, knowledge, or motive of the person who supplied the marihuana. He sought only to show that the source was not he. When a defendant denies participation in the act or acts which constitute the crime, intent is not a material issue for the purpose of applying Rule 404(b). (*United States v. Coades* (9th Cir. 1977) 549 F.2d 1303; *United States v. Silva* (5th Cir. 1978) 580 F.2d 144 [1978]; *United States v. Goodwin* (5th Cir. 1974) 492 F.2d 1141.)

■ Powell's two prior marihuana offenses were not relevant to prove any common scheme, plan, system, or design. The Government produced no evidence which tended to connect Powell's prior criminal conduct with the marihuana in Sullivan's garage. The probative value of evidence of other crimes where the issue is identity depends upon the extent to which it raises an inference that the perpetrator of the prior offenses was the perpetrator of the offense in issue. Both the existence and the strength of an inference proceeds through an evaluation of the similarities between the prior offense and the charged crime. Thus, if the characteristics of both the prior offense and the charged offense are not in any way distinctive, but are similar to numerous other crimes committed by persons other than the defendant, no inference of identity can arise. An inference of identity from prior crimes can only arise when the elements of the prior offenses and the charged offense, singly or together, are sufficiently distinctive to warrant an inference that the person who committed the prior offense also committed the offense on trial. (*United States v. Webb* (9th Cir. 1972) 466 F.2d 1352.) The probative value of evidence of other crimes on the issue of identity always depends upon the strength of the inference; when the inference of identity is weak, evidence of

prior crimes should be excluded because under such circumstances the prejudicial effect of the evidence inevitably outweighs the probative value of that evidence. (*United States v. Myers* (5th Cir. 1977) 550 F.2d 1036; *United States v. Foutz* (4th Cir. 1976) 540 F.2d 733, 2 Weinstein's Evidence ¶ 404[09] at 404–61 *et seq.*)

The 1969 marihuana offense bore no resemblance to the offense charged, except that marihuana trafficking was involved. The 1973 marihuana offense resembled the offense charged only in that large quantities of marihuana were stored in a house, but nothing sets that prior offense apart from any other marihuana trafficking that involves large quantities of marihuana.

■ The district court rejected admission of the 1969 offense upon the remaining ground, motive, but admitted the 1973 offense for that purpose. As the district court found, the 1969 offense was too dissimilar and too remote to have any probative value whatever. The Government succeeded in persuading the district court that the 1973 conviction was probative on the identity issue. We disagree. As Judge Weinstein explains: "Two evidentiary steps are involved. Evidence of other crimes is admitted to show that defendant has a reason for having the requisite state of mind to do the act charged, and from this mental state it is inferred that he did commit the act." (2 Weinstein's Evidence ¶ 404[09], at 404–53 (1976).)

The acts charged are possessing marihuana with intent to distribute it and conspiring with the named co-conspirators to possess and distribute marihuana. Powell's prior conviction for possessing marihuana with intent to distribute it raises an inference that he may have been disposed to commit marihuana offenses, but that is precisely the use of a prior conviction that is forbidden. The Government argued, successfully below, that his prior conviction for possessing marihuana, which he stored in his own home, motivated him to store his marihuana in somebody else's house. Stor-

age in another person's house, however, was not the issue. The issue is whether he was the person who trafficked in this particular marihuana, and the only logical connection between the two marihuana incidents was that a person who has shown a willingness to deal in large quantities of marihuana in one circumstance may be willing to deal in large quantities of marihuana in another. In short, this is the same forbidden use of the prior conviction.

The Government's theory was that Powell's arrest in possession of 500 pounds of marihuana stored in his own house motivated him to find someone else to store the marihuana for him. Therefore, proof that the crime was committed differently from his prior offense raises an inference that he was the perpetrator of the second offense. In other words, when a person is convicted for committing a crime in a particular way, he is motivated to commit the same crime in a different way, and, therefore, when proof is offered that a second crime is committed in a way which is not similar to the prior crime, the very difference between the two crimes becomes probative. ("Having been caught red-handed running his own 'stash house' in January of 1973, he later had enough sense in August of 1973 to persuade others to expose themselves to the obvious risk of discovery and apprehension.") We are unable to follow the Government's peculiar inversion of logic, whereby dissimilarities in a succession of criminal acts becomes marks of identity of the perpetrator.

We hold that the admission of the 1973 conviction was prejudicial error. However, our evidentiary problems are not concluded because, despite the district court's prior ruling, the Government also managed to introduce the 1969 offense for impeachment.

It is not necessary to describe in detail the rather peculiar circumstances by which the Government succeeded in overcoming the district court's prior ruling excluding the 1969 conviction, and the Government's pretrial promise that the prosecutor would not try to use the 1969 prior for impeach-ment purposes. The district court was under the misapprehension that defense counsel's redirect examination of Powell opened the door to impeachment because Powell's redirect testimony at least suggested that he had not had any prior convictions before his 1973 offense. A careful reading of his testimony shows that he did not do so. We have no reason to assume that the situation will arise again on retrial.

Finally, the Government was permitted to ask Powell, over objection, if he had smoked marihuana with Stanley and Sullivan. This evidence was inadmissible for any purpose. Also inadmissible was evidence that Powell had been arrested in 1977 with marihuana in his car. The 1977 incident was not relevant to any issue in the case. The reference was plainly to a collateral matter, and it could not be used for any purpose independently of contradiction. Powell had not denied being a smoker of marihuana, and there was nothing for the Government to impeach. (*E. g., Lee v. United States* (1966) 125 U.S.App.D.C. 126, 368 F.2d 834; *United States v. Jaqua* (5th Cir. 1973) 485 F.2d 193.)

None of the other issues or contentions need be discussed because our disposition of the primary issues adequately disposes of the subsidiary questions as well.

Reversed and remanded for a new trial.