**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Marc R. SHAPIRO,**
**Defendant–Appellant.**

No. 87–5287.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 12, 1988.

Filed March 3, 1989.

As Amended on Denial of
Rehearing July 14, 1989.

Yolanda Orozco, O'Neill & Lysaght, Santa Monica, Cal., for defendant-appellant.

Terree A. Bowers, Asst. U.S. Atty., Los Angeles, Cal., for plaintiff-appellee.

Before NORRIS, HALL and KOZINSKI, Circuit Judges.

CYNTHIA HOLCOMB HALL, Circuit Judge:

Marc R. Shapiro was an employee of International City Investors (ICI), a corporation which sold precious metals through advertisements in various publications. In July of 1986, the Postal Service investigated ICI in response to numerous customer complaints about not receiving bullion that had been paid for in full. An indictment followed, and Shapiro was convicted for mail fraud as a result of his involvement with ICI's precious metal sales.

Shapiro has a prior conviction for grand theft for stealing money from parking meters. Before his trial, he made a motion *in limine* to prevent the use of this prior conviction for impeachment purposes pursuant to Fed.R.Evid. 609. Shapiro indicated that he planned to testify at his trial, but would do so only if his prior conviction was excluded. The prosecution did not file a written opposition to the motion *in limine,* and at the hearing on the motion indicated that it was willing to exclude Shapiro's prior record. The prosecution then agreed "not to offer evidence of Mr. Shapiro's prior felony conviction or cross-examine him as to that conviction." The only qualification the prosecution made was that it would use the prior conviction if Shapiro took the stand and gave "the false

representation or impression to the jury that he [did] not have a prior record."

## I

At trial, Shapiro testified that he worked at ICI principally as an extension of his hobby of collecting coins, and that he did not have financial problems during his employment with ICI. Over Shapiro's objection, the prosecution cross-examined Shapiro about his prior conviction. The government contended that his criminal record was admissible to rebut Shapiro's testimony by indicating his need for money, and was therefore relevant on the issues of motive and intent. The district court admitted the conviction into evidence for these purposes.

## A

Shapiro contends that the government was bound by the terms of the agreement. He argues that the parties' stipulation was in the nature of a contractual agreement; mutually dependent promises based on valid consideration. The same district judge who later presided over the trial sanctioned this agreement. Shapiro argues that he relied on the government's express promise not to question him about the theft conviction. Shapiro waived his right to remain silent and chose to testify in his own defense. Shapiro describes the government's conduct as a unilateral breach of the parties' pretrial understanding, which the government then compounded by questioning Shapiro about the specific facts underlying the conviction. In short, Shapiro argues that the harm and prejudice are clear and that the government committed an egregious breach of trust.

## B

The government's principal defense is that its pretrial agreement was strictly limited to impeachment under Fed.R.Evid. 609. It bases this contention on the fact that Shapiro's motion *in limine* only argued that his prior conviction was inadmissible under Rule 609; it made no mention of excluding the conviction if the government

sought to introduce it as evidence of motive, knowledge, or intent under Fed.R. Evid. 404(b). The government further notes that its understanding of the agreement is bolstered by the fact that the parties finalized the agreement at the hearing on Shapiro's motion *in limine*. According to the government, it simply was not precluded from using the conviction as evidence of motive or intent. The government argues that Shapiro raised the motive issue on direct examination.

The government's second contention is that Shapiro first breached the agreement by denying that he had a prior record. Shapiro testified that William R. Pearson, the government's cooperating witness, had stated, "Marc [Shapiro], I don't know why you have been arrested. You shouldn't have been arrested." The government argues that through this testimony Shapiro was portraying himself as a first time offender, thus indirectly indicating that he had no prior record.

## II

The stipulation between the government and the defendant is similar in nature to a plea agreement. *See United States v. Bronstein*, 623 F.2d 1327, 1329 (9th Cir.), *cert. denied*, 449 U.S. 842, 101 S.Ct. 122, 66 L.Ed.2d 50 (1980); *United States v. Arnett*, 628 F.2d 1162, 1164 (9th Cir.1979). While remand may be appropriate where there is a good faith dispute based upon extrinsic evidence as to the meaning of the terms of the stipulation, it is not appropriate where the language of the agreement clearly reflects the intent of the parties. We review the district court's finding that Shapiro "opened the door" to being impeached by the prior conviction for an abuse of discretion. *See United States v. Rubio*, 727 F.2d 786, 798 (9th Cir.1983).

## A

■ "Stipulations freely and voluntarily entered into in criminal trials are as binding and enforceable as those entered into in civil actions." *United States v. Gwaltney*, 790 F.2d 1378, 1386 (9th Cir.1986), *cert. denied*, 479 U.S. 1104, 107 S.Ct. 1337, 94

L.Ed.2d 187 (1987). This general rule is especially applicable where the United States government is a party to the agreement.[1]

"The federal courts have long been cognizant of the responsibility of federal prosecutors meticulously to fulfill their promises." *United States v. Hudson*, 609 F.2d 1326, 1328 (9th Cir.1979). When the prosecution makes a "deal" within its authority and the defendant relies on it in good faith, the court will not allow the defendant to be prejudiced as a result of that reliance. *United States v. Goodrich*, 493 F.2d 390, 393 (9th Cir.1974).

A prosecuting attorney may not "overstep[ ] the bounds of that propriety and fairness which should characterize the conduct of such an officer in the prosecution of a criminal offense." *Berger v. United States*, 295 U.S. 78, 84, 55 S.Ct. 629, 631, 79 L.Ed. 1314 (1934). A prosecutor must prosecute with earnestness and vigor, but while he "may strike hard blows, he is not at liberty to strike foul ones." *Id.* at 88, 55 S.Ct. at 633.

**B**

This court has never wavered in its obligation to enforce agreements made by prosecutors upon which defendants have justifiably relied to their detriment. Most recently, in *United States v. Bowen*, 857 F.2d 1337 (9th Cir.1988), the government made a pretrial agreement with the defense that it would not seek admission of certain polygraph evidence. The government repeatedly represented to the defense and to the court that it would not seek admission of the polygraph evidence. One month before the trial was to begin, however, the government breached the agreement and sought to have the polygraph evidence introduced. The district court excluded the polygraph evidence, in part due to the government's "questionable conduct" in reneging on its promise. We up-

held the district court's decision, stating that "[t]his last minute change of position ... is beneath the standards we expect of our public prosecutors." *Id.* at 1342.

In *United States v. Garcia*, 519 F.2d 1343 (9th Cir.1975), the government and Garcia entered into a "deferred prosecution agreement." *Id.* at 1344. The government agreed not to press charges if Garcia could produce an acceptable dealer in narcotics. While Garcia failed to produce such a dealer, the government also failed to bring the indictment within the time it was authorized by the agreement to do so. Several weeks after that time period expired, however, the government sought and obtained an indictment. Subsequently, Garcia was convicted of various narcotics charges, and he appealed. This court held that the indictment upon which the conviction was based was obtained as a result of the breach of the express agreement and was therefore invalid, and we reversed Garcia's conviction. *Id.* at 1345. "The upholding of the government's integrity allows for no other conclusion." *Id.*

Perhaps the most analogous instance of governmental fickleness arose in *United States v. Powell*, 587 F.2d 443 (9th Cir. 1978). In *Powell*, the government had made a pretrial promise not to try to use one of the defendant's prior convictions for impeachment purposes. *Id.* at 449. The district court allowed the government to question Powell about the conviction on the grounds that his redirect testimony had "suggested that he had not had any prior convictions before his 1973 offense." *Id.* We stated that "a careful reading of his testimony shows that he did not do so." *Id.*

**III**

■ The government's interpretation of its stipulation with the defense is completely untenable. The government flatly de-

---

1. We certainly never hesitate to enforce the government's obligations under a valid plea agreement. *See, e.g., United States v. Read*, 778 F.2d 1437 (9th Cir.1985) (prosecutor's failure to comply with terms of plea agreement can render plea involuntary), *cert. denied*, 479 U.S. 835,

107 S.Ct. 131, 93 L.Ed.2d 75 (1986); *United States v. Travis*, 735 F.2d 1129 (9th Cir.1984) (when attorney represents the government of the United States and makes a promise of this kind, he must keep it.)

nied any intention to use Shapiro's prior conviction by agreeing "not to offer evidence of Mr. Shapiro's prior felony conviction or cross-examine him as to that conviction." If the government intended to condition its stipulation on the basis that the conviction was admissible as evidence of motive or intent, the government was obligated to do so unambiguously. Shapiro was sandbagged by the government's cross-examination, and the government has only itself to blame for this error.

■ Finally, we find that the district court abused its discretion by allowing the government to elicit evidence of Shapiro's prior conviction on the basis that he opened the door to its admission. Assessing Shapiro's testimony, the court stated that "[t]he impression given by his testimony is this is a man that didn't need to defraud because his financial requirements were being met." The government's stipulation, however, precluded it from using the prior conviction "unless Mr. Shapiro would take the stand and during direct testimony indicate that he had *no prior record.*" Given the exceptionally narrow "no prior record" exception to the stipulation, however, the district court abused its discretion in admitting this evidence.

■ Shapiro argues that his conviction should be reversed and that the government should be precluded from introducing his conviction at a new trial unless the defense were to imply that Shapiro has no prior record. We agree. In *Garcia,* we reversed the defendant's conviction because the indictment was obtained in violation of the express terms of the government's agreement with the defendant. *Garcia,* 519 F.2d at 1345. Furthermore, we cannot say that the government's introduction of Shapiro's prior conviction was harmless. *See United States v. Hodges,* 770 F.2d 1475, 1480 (9th Cir.1985). Accordingly, his conviction must be reversed.

■ It is also apparent that the government must abide by its agreement if it chooses to retry Shapiro. The government has already had the benefit of learning Shapiro's defense testimony. The govern-

ment now knows his defenses and Shapiro will be at a disadvantage in a new trial. In any event, the government made a bargain which justice demands be kept.

IV

■ Shapiro contends that the district court erred in allowing into evidence the unredacted written plea agreement between the government and his codefendant, William R. Pearson. Pearson had signed a standard plea agreement stating that the government would file no additional charges against Pearson in exchange for Pearson's assistance in the prosecution.

Shapiro argues that the plea agreement in its unredacted form, with its emphasis on multiple proceedings and investigations, gave the jury the impression that he was involved in more schemes to defraud than the one in the indictment. Shapiro concludes that this emphasis made the plea agreement unduly prejudicial. Shapiro notes that the jury requested a copy of the plea agreement for further review during its deliberations and reached a guilty verdict a short while after receiving the copy.

A district court's evidentiary rulings will be overturned only for an abuse of discretion. *United States v. Rohrer,* 708 F.2d 429, 432 (9th Cir.1983). The district court in *Rohrer* allowed the government to rehabilitate its cooperating witness by using the full text of a cooperation agreement, but only after defendants had extensively impeached the cooperating witness' motives and had discussed parts of the agreement. *Id.* at 433. We upheld the admission of the agreement as relevant to the cooperating witness' credibility.

In this case as well, the plea agreement was introduced after an extensive attack on Pearson's credibility. Shapiro even required Pearson to read several portions of the plea agreement while attempting to discredit his testimony and motives for cooperation. Under *Rohrer,* the district court did not abuse its discretion by admit-

ting the plea agreement into evidence.[2]

REVERSED.

---

**2.** Shapiro raises other objections with respect to the plea agreement. He did not present them to the district court, and we therefore decline to consider them. He may assert them if he is retried.