980 F.2d 739
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Landy LAFRADEZ, aka Andy, Defendant-Appellant.
 No. 91-10469.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Nov. 2, 1992.
Decided Dec. 4, 1992.
 
 Before JAMES R. BROWNING, NORRIS and REINHARDT, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Landy Lafradez challenges his conviction on drug related charges on the basis of several evidentiary and other rulings. We affirm.
 
 
 3
 * In order to show that Lafradez had the knowledge and intent necessary to be convicted for his participation in the drug ring, the government introduced evidence from an unrelated arrest during a traffic stop. The evidence, which had been in Lafradez's possession when he was pulled over, included a beeper whose phone number appeared in Guerrero's drug ledgers, a broken cellular phone, a bayonet, a loaded handgun, a bong, a briefcase containing stacks of hundred dollar bills and eight packages of cocaine, and other quantities of cocaine, methamphetamine, and marijuana. Lafradez challenges admission of this evidence under Rules 403 and 404(b) of the Federal Rules of Evidence.
 
 
 4
 We review decisions to admit evidence of other crimes or bad acts for abuse of discretion. United States v. Spillone, 879 F.2d 514, 518 (9th Cir.1989), cert. denied, 111 S.Ct. 210 (1990). A four-part test provides the rule of decision: (1) there must be sufficient evidence that the defendant committed the act; (2) the act must be probative of a material fact in this case; (3) the act must not be too remote in time; and (4) if admitted to prove intent, it must be similar to the offense charged. Id. at 518-20.
 
 
 5
 All four prongs of the Spillone test have been satisfied as to this evidence. First, Lafradez apparently concedes having possessed it. Second, the evidence tends to prove that Lafradez's participation in the drug conspiracy was with full knowledge and intent, a material fact the government must prove.[1] Third, the traffic stop was not too remote in time because it occurred during the period of the alleged conspiracy. And fourth, the act of possessing drugs, cash, illegal weapons, a beeper and cellular telephone is similar to the acts of a conspirator in Guerrero's drug ring. Thus we find the district court did not abuse its discretion in admitting this evidence against Lafradez.
 
 II
 
 6
 "Sonny" Guerrero, the leader of the methamphetamine conspiracy, struck a plea bargain with the government that called for him to testify against his confederates at trial. The government's opening statement made several references to what Guerrero would tell the jury, but Guerrero subsequently informed the government he would not testify after all. When called to the stand, he stated only "I swear to tell the truth, but I refuse to testify in this trial." Defendants immediately moved for a mistrial, which the district court denied. Lafradez here appeals that ruling, arguing that his Sixth Amendment right to confront the witnesses against him has been violated. We review a district court's denial of a mistrial for abuse of discretion. United States v. Homick, 964 F.2d 899, 906 (9th Cir.1992).
 
 
 7
 Lafradez cites Douglas v. Alabama, 380 U.S. 415 (1965), as support for his contention that a mistrial should have been declared. The Court held in Douglas that a mistrial must be granted where a co-defendant's written confession is read to the jury but the co-defendant, invoking his right against self-incrimination, is unavailable for cross-examination. The controlling Supreme Court precedent in this case, however, is Frazier v. Cupp, 394 U.S. 731 (1969), whose facts are much closer to those of our case. In Frazier, the prosecutor's opening statement paraphrased testimony he expected to elicit from a cooperating co-defendant. As in this case, the co-defendant later declined to testify. The Supreme Court held that a mistrial was not required because limiting instructions sufficed to protect the defendant's constitutional rights. Frazier, 394 U.S. at 735.
 
 
 8
 As in Frazier, the district court here gave adequate limiting instructions. When Guerrero reneged on his agreement to testify, the district court instructed the jurors that they were to draw no inferences from his failure to take the stand, nor to speculate as to what his testimony might have been. The court also repeated its earlier admonishment not to consider opening statements made by counsel as evidence. Under these circumstances, we hold on the authority of Frazier that the district court did not abuse its discretion in refusing to declare a mistrial.
 
 III
 
 9
 In place of Guerrero's testimony, the government introduced his drug ledgers and the testimony of Officer Like, a police investigator who explained to the jury how to decipher annotations in Guerrero's handwriting to reconstruct the drug transactions they allegedly recorded. Lafradez challenges the admissibility of both the drug ledgers and the officer's testimony.
 
 
 10
 Lafradez argues that the district court's decision to admit the drug ledgers violated Rule 801(d)(2)(E) of the Federal Rules of Evidence, which excludes co-conspirator's statements from the definition of excludable hearsay. He contends that the government has not shown the necessary predicate facts for invoking the co-conspirator's exception, specifically that Lafradez was a knowing participant in the conspiracy and that the ledgers were kept in furtherance of the conspiracy. See United States v. Silverman, 861 F.2d 571, 576 (9th Cir.1988). As to his involvement in the conspiracy, Lafradez ignores "Tapat's testimony that the two of them travelled to Los Angeles together to pick up methamphetamine for Guerrero, and that Tapat gave Lafradez money for a return ticket on Guerrero's instructions. He also ignores Annette Apana's testimony that she saw Tapat wrap the drugs around Lafradez with a nylon stocking, and that Lafradez was sufficiently aware of the implications of carrying drugs that he appeared nervous. Finally, hotel records from the Holiday Inn at LAX establish that Lafradez stayed there with Tapat, and that five calls were made from his room to Guerrero's cellular phone. Lafradez's contention that the drug ledgers were not kept in furtherance of the conspiracy is belied by the testimony of co-conspirators Tapat and Antolin.
 
 
 11
 Lafradez challenges Officer Like's expert testimony, arguing that Like could provide no real assistance to the jury. See Fed.R.Evid. 702. It is well established that qualified law enforcement officers may provide expert testimony, including testimony that aids the jury in understanding a drug dealer's ledgers. United States v. Espinosa, 827 F.2d 604, 611-13 (9th Cir.1987). We hold that the district court did not abuse its discretion in allowing Officer Like to testify. See United States v. Miller, 874 F.2d 1255, 1266 (9th Cir.1989).
 
 IV
 
 12
 Lafradez further contends that the district court erred in allowing the government to introduce as extrinsic evidence the original indictment, which contained 48 overt acts describing the alleged conspiracy that were later stricken from the indictment. At the start of the trial, the indictment read to the jury contained 45 separate counts, including a conspiracy charge comprising 74 overt acts. After Guerrero's refusal to testify, the government moved to dismiss 32 of the 45 counts and to strike 48 of the 74 overt acts. In granting the government's motion, the district court called this dismissal "massive." But the court instructed the jury twice during pretrial instructions and once in its closing instructions that the indictment was not evidence but merely an accusation. And the only written copy of the indictment provided to the jury was a redacted version that did not include the dismissed charges or stricken overt acts. Under these circumstances, we are unable to conclude that the jury's verdict was more likely than not affected by charges it had heard only once at the start of the trial, two and a half months before it began its deliberations. Accordingly, any error would have been harmless. See United States v. Liu, 941 F.2d 844, 848 (9th Cir.1989).
 
 V
 
 13
 Finally, Lafradez argues that the evidence was insufficient to sustain the verdict against him. Viewing the evidence in the light most favorable to the government, we find adequate support for the verdict. See United States v. Dorotich, 900 F.2d 192, 195 (9th Cir.1990). In addition to the testimony of Tapat and Apana, which was corroborated by the Los Angeles hotel records, the jury heard Officer Like's testimony interpreting annotations in Guerrero's drug ledgers in a way that linked Lafradez to the relevant transactions.
 
 
 14
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Defendant relies on United States v. Powell, 587 F.2d 443, 448 (9th Cir.1978), for the proposition that knowledge and intent are not at issue when the defendant denies participation in the acts that constitute the crime. This argument has no place here because Lafradez clearly made his lack of knowledge the major issue at trial