**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee,*

            v.

BOBBIE BEAR,
            *Defendant-Appellant.*

No. 04-50161

D.C. No.
CR-02-00247-
ABC-5

OPINION

Appeal from the United States District Court
for the Central District of California
Audrey B. Collins, District Judge, Presiding

Argued and Submitted
September 14, 2005—Pasadena, California

Filed February 24, 2006

Before: Jerome Farris, David R. Thompson, and
Jay S. Bybee, Circuit Judges.

Opinion by Judge Thompson

1995

## COUNSEL

Benjamin L. Coleman, San Diego, California, for the defendant-appellant.

Shannon P. Ryan, Assistant United States Attorney, Los Angeles, California, for the plaintiff-appellee.

**OPINION**

THOMPSON, Senior Circuit Judge:

A jury convicted Bobbie Bear of conspiracy to manufacture and distribute methamphetamine, in violation of 21 U.S.C. § 846. During her trial, Bear asserted that she had been working for the government in a criminal investigation as a confidential informant when she engaged in the alleged illegal drug activities. She testified that she informed Deputy Darren Hager about these activities. Hager was a Los Angeles County Sheriff's Department deputy who had been assigned to the Drug Enforcement Administration ("DEA").

Bear argues that although she did not request a public authority instruction, this was the crux of the defense reflected in her testimony and in closing arguments of both counsel. She argues the district court erred by not giving the jury a public authority instruction, sua sponte. She also contends the district court erred by permitting the government to call Deputy Hager as a rebuttal witness in spite of what she argues was a stipulation by the government not to call him as a witness in the case.

We have jurisdiction pursuant to 28 U.S.C. § 1291. We conclude that the district court committed plain error by not giving the jury, sua sponte, a public authority defense instruction, and we reverse Bear's conviction. Because the government may retry Bear, we also consider whether the government properly called Hager as a rebuttal witness, and conclude the government was not precluded from doing so. We also conclude that the government's stipulation pertaining to this witness will bind it in any retrial, during which the government may only present Hager as a witness in rebuttal, not in its case-in-chief.

*I.  Background*

Prior to Bear's alleged participation in the charged conspiracy, she acted as a confidential source for the DEA in its

investigation of Christopher Chapman, a methamphetamine manufacturer and distributor. She made two controlled purchases of methamphetamine from Chapman in November of 2000.

In March of 2001, the DEA intercepted phone calls indicating that Bear was engaging in additional, allegedly unauthorized activities with Chapman, including attempting to broker a deal for the manufacture and distribution of twelve to fifteen pounds of methamphetamine. On March 14, 2002, the DEA arrested Bear in connection with these activities. During interrogation, she denied that any of the DEA agents, including Deputy Hager, had authorized these acts.

After Bear's arrest, the government learned that Hager was the subject of an internal affairs investigation and disciplinary action by the Los Angeles County Sheriff's Department ("LASD") concerning allegations that he had wrongly accused another officer of assisting drug dealers. The government reported this to Bear by letter and informed her of a nine-volume investigative report in the custody of the LASD Internal Affairs Bureau. In its letter, the government summarized the investigation based upon a conversation with an internal affairs sergeant. The government also stated that "the government does not intend on calling [Hager] as a witness at trial."

A series of pretrial conferences ensued, during which counsel for both sides discussed the internal affairs investigation, as well as an agreement by the government limiting Deputy Hager's testimony at trial. On the third day of trial, a dispute arose about that agreement's scope. The government maintained that it had limited the agreement to its case-in-chief, and had reserved the right to call Hager in rebuttal. Bear's counsel contended that the agreement barred Hager's testimony in any capacity. The district court agreed with the government and, after Bear testified that she believed she was still cooperating with Hager and acting on behalf of the gov-

ernment when she engaged in the charged activities, the court allowed the prosecutor to call Hager in rebuttal. Hager testified that he did not authorize the charged activities, and that Bear never told him about them.

When the court instructed the jury, it did not give an instruction on public authority, governmental authorization, or any other affirmative defense. The jury convicted Bear, who was subsequently sentenced to 235 months imprisonment, five years supervised release, and a $100 special assessment. This appeal followed.

## II.   Discussion

### A.   Public Authority Instruction

**[1]** Bear argues that the district court committed reversible error by not giving the jury a sua sponte instruction on a public authority defense. The public authority defense is properly used when the defendant reasonably believed that a government agent authorized her to engage in illegal acts. *See* Ninth Circuit Manual of Model Criminal Jury Instructions, Instruction 6.10 (2003).

Because defense counsel neither requested a public authority instruction, nor objected to the instructions the court did give the jury, we review for plain error. *United States v. Montgomery*, 150 F.3d 983, 996 (9th Cir. 1998). To reverse under this standard, "there must be (1) 'error,' (2) that is 'plain,' and (3) that 'affect[s] substantial rights.' " *Johnson v. United States*, 520 U.S. 461, 466-67 (1997) (quoting *United States v. Olano*, 507 U.S. 725, 732 (1993)). If these three conditions are met, we may exercise our discretion to reverse, but "only if (4) the error seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." *Id.* at 467 (internal quotation marks removed). Bear satisfies this four-prong test.

**[2]** First, the district court erred by not instructing the jury on a public authority defense. When a defendant actually presents and relies upon a theory of defense at trial, the judge must instruct the jury on that theory even where such an instruction was not requested. *Cf. Montgomery*, 150 F.3d at 996 ("We conclude that Montgomery did not rely on a *Sears*-type defense theory at trial. Accordingly, the district court's failure to offer a *Sears* instruction *sua sponte* was not plain error."); *United States v. Span*, 970 F.2d 573, 578 (9th Cir. 1992) ("We conclude that the district court did not commit plain error by failing to offer *sua sponte* an instruction on an excessive force theory of defense not raised during trial.").

As a deputy from the Los Angeles County Sheriff's Department on loan to the DEA as a task force officer, Hager either had or reasonably appeared to have the power to authorize Bear's illegal acts. Bear testified that she believed she was continuing to cooperate with the government when she committed the alleged offenses, and that she kept Hager abreast of these otherwise-illegal activities.

In his closing argument to the jury, defense counsel stated that Hager "lied" when he denied that Bear had told him anything about the alleged offenses, and that "it's just this credibility issue that is the main important aspect of this case that you have to make a decision on." Defense counsel devoted the conclusion of his closing argument entirely to this issue, beginning as follows: "The focus of this case is whether you believe my client, Ms. Bear, informed Deputy Hager at that time about this transaction . . . ."

**[3]** Because Bear's testimony and closing argument clearly presented a claim of public authority, a jury instruction on that theory of defense was required. The district court erred by not giving that instruction sua sponte. Bear satisfies the first prong of the plain error test.

**[4]** Bear also satisfies the second prong because the court's error was plain. An error is plain if it is "clear" or "obvious"

under current law. *Johnson*, 520 U.S. at 467 (citing *Olano*, 507 U.S. at 734). As discussed above, Bear repeatedly emphasized her claim of public authority throughout the trial. In closing argument, defense counsel clearly indicated that it was the crux of Bear's defense. The government also devoted a portion of its closing argument to refuting Bear's claim of public authority. In one representative example, after reminding the jury that Bear testified to having kept Hager abreast of her allegedly illegal activities, government counsel stated: "That is the only little wiggle room [Bear] thought she had, and it's a lie. She never called Deputy Hager."

**[5]** Moreover, public authority has been a viable defense since long before Bear's trial in 2003. *See, e.g.*, *United States v. Davis*, 76 F.3d 311, 314 (9th Cir. 1996); *United States v. Mason*, 902 F.2d 1434, 1440-41 (9th Cir. 1990). A model jury instruction for the defense was published in this circuit in 1997 entitled "Public Authority or Government Authorization Defense." *See* Ninth Circuit Manual of Model Criminal Jury Instructions, Instruction 6.10 (2003); Ninth Circuit Manual of Model Criminal Jury Instructions, Instruction 6.8 (1997). Given the public authority defense's longstanding presence in our circuit, and that Bear clearly presented it as the crux of her defense, the district court's error in omitting the instruction was plain. *Cf. United States v. Burt*, 143 F.3d 1215, 1218 (9th Cir. 1998) (holding that the district court's error in giving an inaccurate jury instruction was plain because prior case law established the instruction's proper parameters).

Bear also satisfies the third prong of the plain error test because the error affected her substantial rights. "An error prejudices the substantial rights of a defendant when it 'affect[s] the outcome of the proceedings.'" *United States v. Fuchs*, 218 F.3d 957, 962 (9th Cir. 2000) (quoting *United States v. Baron*, 94 F.3d 1312, 1318 (9th Cir. 1996)). In *Fuchs*, we found that the district court's failure to include a jury instruction affected the defendant's substantial rights because it cre-

ated a genuine possibility that the jury convicted on a legally inadequate ground. *See id.* at 963.

**[6]** Despite Bear's claim of public authority, the district court instructed jurors that they could convict her if she knowingly agreed with others to manufacture or distribute methamphetamine. The instructions stated that "[t]he Government is not required to prove that the defendant knew that her acts or omissions were unlawful." Following these instructions, the jury could have found that Bear reasonably believed she was acting under public authority, but still convicted her of knowingly committing the offense. A public authority instruction would have precluded this possibility. The district court's failure to give the public authority instruction, therefore, affected Bear's substantial rights.

This conclusion is unaffected by counsels' statements during closing argument that the jury should acquit Bear if they believed her rather than Hager. The district court instructed the jury that "[y]our verdict must be based solely on the evidence and on the law as I have given it to you in these instructions." This clearly excludes counsels' statements during closing, and thus those remarks do not undermine the impact of omitting to instruct the jury on a public authority defense.

Regarding the fourth prong of the plain error test, we may exercise our discretion and reverse Bear's conviction only if the error "seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Fuchs*, 218 F.3d at 962 (citing *Johnson*, 520 U.S. at 467). Allowing the conviction to stand does not have those serious effects on judicial proceedings when the evidence against the defendant on the issue erroneously explained to the jury is "overwhelming." *Id.* at 963 (citing *Johnson*, 520 U.S. at 470). The Supreme Court found such overwhelming evidence when the erroneous instruction pertained to a fact that was "essentially uncontroverted at trial." *Johnson*, 520 U.S. at 470. As we explained in *Fuchs*, however, evidence is not overwhelming simply

because it is sufficient to support a guilty verdict. *See Fuchs*, 218 F.3d at 963 (stating that "[w]hile there was enough evidence to support the verdict, the entire record also supports an inference [to the contrary]," and concluding that "[a]llowing defendants' convictions to stand, given the likelihood that the jury may not have convicted had they been properly instructed, would be a 'miscarriage of justice.' " (quoting *United States v. Shortman*, 91 F.3d 80, 82 (9th Cir. 1996))).

While there is strong evidence that Bear did not reasonably believe that the government had authorized her actions, the record would also support a contrary finding. During a post arrest interview, Bear denied that anyone had authorized her to commit the alleged offenses. At trial, however, she testified that she believed she was cooperating with the government through Deputy Hager until the moment of her arrest. She also testified that she feared for her life at the time of her arrest because she believed that members of the DEA task force had been leaking her identity to people she helped investigate. She claimed that this fear and mistrust initially caused her to deny her cooperative status during the post arrest interview.

**[7]** Bear's testimonial support for a finding that she acted with a reasonable belief of public authority—especially considering that it was her sole theory of defense—is not overwhelmed by the contrary evidence. As in *Fuchs*, allowing Bear's conviction to stand, given the likelihood that the jury may not have convicted had they been properly instructed, would seriously affect the fairness, integrity, or public reputation of judicial proceedings. Accordingly, we exercise our discretion to reverse.[1]

---

[1]Federal Rule of Criminal Procedure 12.3 is inapposite to our plain error analysis. Rule 12.3 requires defendants to provide government counsel with pretrial notice of their intent to raise a public authority defense. Fed. R. Crim. P. 12.3(a). A failure to comply allows the court to exclude the testimony of any undisclosed witness *except the defendant*, regarding the public authority defense. Fed. R. Crim. P. 12.3(c). The defendant Bear was the only witness called in support of the public authority defense. Therefore, without addressing the adequacy of Bear's notice, we conclude that Rule 12.3 is inapplicable to our analysis.

### B.  Pretrial Agreement

Bear also argues that the government breached a pretrial agreement by calling Deputy Hager as a witness in its rebuttal case. She contends the government stipulated that it would not call Hager at trial. The government, however, maintains that it only agreed not to call Hager in its case-in-chief, and therefore acted properly by using him exclusively in rebuttal. Because in the event of a retrial the government will be bound by whatever agreement it made, *see United States v. Shapiro*, 879 F.2d 468, 472 (9th Cir. 1989) ("It is also apparent that the government must abide by its agreement if it chooses to retry [defendant]."), we will resolve the question of the scope of the government's agreement.

**[8]** Interpreting the agreement is a question of law we review de novo. *See United States v. Lawton*, 193 F.3d 1087, 1094 (9th Cir. 1999) ("The interpretation of stipulations is, like the interpretation of contracts, an issue of law reviewed de novo." (citing *Braxton v. United States*, 500 U.S. 344, 350 (1991))). To effectively limit an agreement to its case-in-chief, the government must communicate that limitation unambiguously. *See Shapiro*, 879 F.2d at 472 ("If the government intended to condition its stipulation . . . the government was obligated to do so unambiguously.").

Prior to trial, government counsel sent a letter to six co-defendants, including Bear, stating that the Los Angeles Sheriff's Department had terminated Deputy Hager's employment as explained in a nine-volume internal affairs investigative report. The letter also stated that "the government does not intend on calling him as a witness at trial." At a pretrial conference one week later, Bear's counsel requested a two-month continuance to obtain the internal affairs files for impeachment purposes. Government counsel stated that "[t]he government does not plan on calling [Hager] as a witness in our case, so I'm not sure what impeachment counsel is talking about because he's not going to be called as a witness." Gov-

ernment counsel also said that the files were wholly unrelated to Bear's case according to internal affairs, and that they might be difficult to obtain from the state. Nonetheless, government counsel offered to help Bear obtain the files, and stated that the government had no objection to a several-month continuance.

The district court granted a one-week continuance, and scheduled another pretrial conference to discuss Bear's progress in obtaining the files and the possibility of a further continuance. At that follow-up pretrial conference, Bear's counsel made the following statement:

> I spoke with the U.S. Attorney Miss Wright today, and since we received the memo from the U.S. Attorney's office that the government is not going to be calling Deputy Hager as a witness, and if this is put on the record, we would not be needing to pursue this avenue of investigating the reasons of taking a look at those nine volumes of records at the sheriff's department pertaining to Deputy Hager's termination.

This statement refers to an off-record conversation between counsel regarding the agreement limiting Hager's testimony, but does not reveal the details of that discussion or the agreement's scope. Because the agreement-defining conversation appears to have occurred off the record, and neither party clarified the record prior to trial, it is unclear whether, pretrial, the government had expressly limited the agreement to its case-in-chief.

This ambiguity, however, evaporates upon consideration of counsels' discourse at trial. On the first day of trial, the prosecutor stated that she had "previously discussed with defense counsel the fact that the Government does not intend to call Deputy Hager in its case-in-chief," and that "[p]erhaps something in Defendant's cross-examination, as I have already dis-

cussed with defense counsel, may raise an issue in the Government's rebuttal case." Defense counsel did not object to this representation of the agreement's limited scope, despite its clarity and despite its reference to a prior conversation during which the government had expressly communicated the limitation.

Upon learning of Hager's presence in court on the third day of trial, defense counsel objected, stating that there was an "agreement between Government counsel and Defense that Deputy Hager is not going to testify." The prosecutor insisted that the government had clearly communicated the case-in-chief limitation, and had expressly reserved the right to call Hager in rebuttal, both prior to and during trial without objection. The district judge agreed with the prosecutor, and allowed Hager to testify.

[9] We affirm the district court's determination that the agreement not to call Hager was limited to the government's case-in-chief. Defense counsel failed to object on the first day of trial to the government's explicit description of the limited agreement—including a right to call Hager on rebuttal—and references to prior, consistent, scope-defining discussions. This indicates that the government had unambiguously communicated the agreement's case-in-chief limitation. Consequently, in any retrial of this case against Bear, while Hager may not testify in the government's case-in-chief, he may testify as a rebuttal witness.

### III.    Conclusion

The district court committed plain error by failing to give the jury a sua sponte instruction on the public authority defense, and that error requires reversal of Bear's conviction. The court did not err in interpreting the government's agreement limiting Hager's testimony. In any retrial of this case against Bear, the government is entitled to call Hager as a rebuttal witness, but may not call him in its case-in-chief.

**REVERSED** and **REMANDED**.