UNITED STATES of America,
Plaintiff–Appellee,

v.

Pedro Pablo CABRERA, Defendant–
Appellant.

No. 99–10242.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 14, 2000.

Filed Feb. 1, 2000.

Clay Hernandez (on the briefs), and Brenda Dabdoub–Caballero (argued), Law Offices of Clay Hernandez, Tucson, Arizona, for the defendant-appellant.

Robert L. Miskell, Assistant United States Attorney, Tucson, Arizona, for the plaintiff-appellee.

Before: ALARCON, TASHIMA, and SILVERMAN, Circuit Judges.

ALARCON, Circuit Judge:

Pedro Pablo Cabrera ("Cabrera") appeals from the judgment entered following a trial by jury. Cabrera was convicted of knowingly transporting illegal aliens in violation of 8 U.S.C. § 1324(a)(1)(A)(ii), and bringing aliens into the United States for the purpose of commercial advantage or private financial gain in violation of 8 U.S.C. § 1324(a)(2)(B)(ii). He contends that the conviction should be reversed because the prosecutor committed prejudicial misconduct in questioning Cabrera and a customs agent regarding Cabrera's prior convictions, and in his opening statement and closing argument. We affirm because we conclude that the prosecutor did not violate the district court's rulings regarding the admissibility of Cabrera's prior convictions. We also hold that the prosecutor did not imply in his opening argument that Cabrera was guilty of any crimes other than those with which he was charged, nor did the prosecutor improperly shift the burden of proof and persuasion by arguing that Cabrera failed to call witnesses to corroborate his testimony.

I

On September 21, 1998, Cabrera drove an automobile into the United States from Mexico. A border patrol agent stopped Cabrera soon thereafter because the license plates on his car were assigned to a different vehicle. The agent observed several other people in the car. The agent took the car's passengers into custody upon determining that they were in the United States without proper documentation. Cabrera was charged with knowingly transporting illegal aliens in violation of 8 U.S.C. § 1324(a)(1)(A)(ii), and bringing aliens into the United States for the purpose of commercial advantage or private financial gain in violation of 8 U.S.C. § 1324(a)(2)(B)(ii).

Videotaped depositions of two of the passengers were played at trial. Both testified that Cabrera had agreed to drive them to Phoenix if each of them paid him $800. Cabrera testified that he had crossed the border alone, stopped to make a phone call, and was then asked to drive some people to Phoenix. Cabrera stated that he had agreed to drive the people as a favor to a friend. The jury found Cabrera guilty of both crimes. Final judgment was entered on March 17, 1999. We have jurisdiction pursuant to 28 U.S.C. § 1291.

## II

■■■ Cabrera raises several instances of alleged prosecutorial misconduct in his appeal. Where defense counsel objected to acts of alleged prosecutorial misconduct at trial, we review for harmless error. *See United States v. Sanchez,* 176 F.3d 1214, 1218 (9th Cir.1999). Absent such an objection, we review for plain error. *See id.* We must view a claim of prosecutorial misconduct in the entire context of the trial. *See United States v. Christophe,* 833 F.2d 1296, 1300 (9th Cir.1987). "Reversal on this basis is justified only if it appears more probable than not that prosecutorial misconduct materially affected the fairness of the trial." *United States v. Sayakhom,* 186 F.3d 928, 943 (9th Cir.1999) (citation omitted), *amended by* 197 F.3d 959 (9th Cir.).

■■■ Cabrera contends that several of the prosecutor's questions amounted to reversible misconduct. He first argues that the prosecutor engaged in misconduct by asking him during cross-examination whether he had any prior convictions. Cabrera asserts that the district court had previously ruled that the prosecutor could not question Cabrera regarding his prior convictions. Cabrera cites a single sentence from the record, taken out of context, to support his contention that the district court had ruled that the prosecutor

was precluded from asking any questions concerning Cabrera's prior convictions. During the pretrial hearing, the district court stated: "Well. I think we will put it this way, he would have to acknowledge that he has two misdemeanor convictions without going into what they are." Cabrera ignores this portion of the district court's ruling and focuses on the colloquy that followed the district court's ruling. The prosecutor argued that the act of placing a false sticker on a car goes to the honesty of the person. The district court responded as follows: "I am going to sustain the objection to that. I don't think it would be helpful. I don't think it would add to anything."[2]

Cabrera argues that, in making this statement, the district court reconsidered its penultimate ruling and, instead, directed the prosecutor not to ask any questions regarding Cabrera's prior convictions. We disagree. We are persuaded that in stating that it would sustain "the objection to that," the district court was precluding any reference to the act of placing a false sticker on a car. The district court did not purport to change its ruling that the prosecutor was permitted to ask Cabrera about his misdemeanor convictions. Instead, the court ordered the prosecutor not to ask any questions regarding the details of Cabrera's prior convictions. The district court explained the scope of its ruling when Cabrera's defense attorney objected during the cross-examination of Cabrera and moved for a mistrial after the close of evidence. In ruling upon defense counsel's objection at trial, the district court stated: "He can ask. According to the prior ruling, he can answer the question yes or no and the degree." Prior to instructing the jury, the district court again overruled defense counsel's objection to the question regarding Cabrera's prior conviction. The court stated:

---

**2.** Under Rule 609(a), misdemeanors involving dishonesty or false statement can be used for impeachment. Because the impeachment value of such convictions derives not from the mere fact of conviction (as is the case with felonies) but from the nature of the misdemeanors, the district judge should have allowed the prosecutor to elicit the names of the misdemeanor offenses for which the defendant had been convicted.

What I remember of the ruling is that he could be asked whether he had been convicted of any misdemeanor, but without going into any of the detail as to what the misdemeanor conviction involved. In other words, you were concerned about the fact that it involved misdemeanor switching of a license plate or something, and I felt that the nature of it was too similar to what we had here in this case and sustained your objection to that, but it is my recall that we ruled that just the fact of a misdemeanor conviction could be referred to.

Thus, contrary to Cabrera's contention, the district court never barred any mention of Cabrera's convictions. This case is, therefore, distinguishable from the facts before this court in *United States v. Shapiro*, 879 F.2d 468 (9th Cir.1989) and *United States v. Sanchez*, 176 F.3d 1214 (9th Cir.1999). In *Shapiro*, we held that the prosecution committed misconduct by asking the defendant about his prior convictions after stipulating prior to trial that it would not introduce prior bad acts evidence. 879 F.2d at 471–72. In *Sanchez*, we concluded that the prosecutor was guilty of misconduct in presenting otherwise inadmissible evidence through artful cross-examination. 176 F.3d at 1221–22. Here, the prosecutor did not engage in misconduct. He did not seek to introduce evidence that had been ruled inadmissible. *Cf. United States v. Etsitty*, 130 F.3d 420, 424 (9th Cir.1997) (holding that there was no prosecutorial misconduct where "[n]othing in the questioning or the answers given can be construed to reflect an intention by the prosecutor to mislead the jury."), *amended by* 140 F.3d 1274 (9th Cir.1998).

■ Cabrera also claims that the prosecutor engaged in misconduct when he failed to clarify in his cross-examination that Cabrera's prior conviction was a misdemeanor. During cross examination, the prosecutor asked Cabrera, "Do you have any prior convictions?" Cabrera asked the prosecutor what he meant by the question and the prosecutor asked, "Have you been charged with a crime and found guilty or

pled guilty?" Cabrera responded, "I think I had, yes." The prosecutor asked no further questions. Cabrera's defense counsel then immediately asked Cabrera on redirect, "I understand that you have a misdemeanor conviction, correct?" Cabrera responded, "Yes."

Cabrera argues that because his defense counsel was compelled to establish that Cabrera's prior conviction was a misdemeanor, the jury may have been confused as to the nature and number of Cabrera's prior convictions. We disagree. Any possible confusion concerning Cabrera's prior bad acts was promptly clarified by counsel's redirect examination.

■ Cabrera next maintains that the prosecutor committed misconduct by asking him on cross-examination if he had prior contact with law enforcement. During his direct examination, Cabrera testified that after he left the hotel and saw that the border patrol agent's vehicle's lights were activated, he "did the normal procedures, stopped as soon as possible." During cross-examination the prosecutor asked Cabrera: "You said you saw the lights and you did the normal procedure. Is that because you have prior contact with law enforcement officials?" Over objection, Cabrera answered: "Once you see a blue and red lights behind you, the most normal thing to do is stop the car." The prosecutor then asked: "Okay. I was just curious why you said the normal procedure. Have you had any prior convictions?"

Cabrera argues that the question regarding his prior contact with law enforcement officials was an impermissible attempt by the prosecutor to alert the jury to his criminal history. The prosecutor's question did not amount to reversible misconduct because, even if erroneous, it was harmless. As discussed above, the district court had previously ruled that the prosecutor could ask Cabrera if he committed prior misdemeanors. The prosecutor's question regarding prior contact with law enforcement was, at most, an inartful at-

tempt to clarify Cabrera's testimony regarding the "normal procedures" he followed upon seeing the flashing lights of a patrol car. Cabrera's response did not elicit evidence that would have prejudiced the jury against him.

■ Cabrera also claims that the prosecutor elicited testimony precluded by the court's earlier ruling when he asked Border Patrol Agent Paul Waterman whether he had encountered Cabrera on the night Cabrera was arrested. The Government contends that the prosecutor simply followed the procedure established by the district court and did not elicit precluded evidence.

Prior to trial, the parties discussed whether evidence that Cabrera said, "[w]ell, I had to do it," in response to Agent Waterman's comment that "[t]hey finally got you," would be admissible. The district court initially ruled that Cabrera's statement would be excluded because he was in custody at the time he made the statement, but had not been given Miranda warnings. The next day, however, the court stated, in reconsidering its ruling:

> What I am going to do is listen to the testimony, and then when we get to that point, I will indicate whether or not the objection raised by [defense counsel] is sustained or overruled ... So let's listen to the testimony and be careful in front of the jury, we are not going to alert them, or as to the issue, but I will rule on them.

Defense counsel did not object to this procedure.

At trial, the prosecutor asked Agent Waterman whether he came into contact with Cabrera on September 21, 1998. Agent Waterman responded that he had seen Cabrera. The following exchange then took place:

> Q: Okay. And what did your contact with Mr. Cabrera consist of that night on the 21st?
> A: I walked into the ... office ..., saw Mr. Cabrera and just looked at him and said, "We got you."

[Defense Counsel]: Excuse me, Your Honor, anticipating further questions from the Government, I apologize, I may have to wait until the question is asked, but I am going to object to continuation of questions to this witness about those conversations.

The Court: I am going to sustain the objection.

The prosecutor did not commit misconduct in asking this question. The district court had not ruled that it was impermissible to ask any questions concerning the officer's encounter with Cabrera. Rather, the district court told the parties that it would rule on any objection when a question was asked concerning this subject matter. Cabrera's reliance on *Sanchez* is unavailing here because in that matter the prosecutor introduced evidence barred by the district court prior to trial. 176 F.3d at 1223–1224. Here, the prosecutor's question did not relate to evidence previously excluded by the court.

We note that defense counsel did not move to strike the officer's response to the prosecutor's question. Instead, defense counsel objected to a "continuation of questions" regarding the conversation between the officer and Cabrera. The court sustained this objection. As a result, the jury never heard Cabrera's response.

Finally, Cabrera claims that he was prejudiced by Customs Inspector Matthew Lacelle's testimony that customs agents had searched Cabrera's car on previous occasions. Inspector Lacelle's testimony was elicited on cross-examination, in response to defense counsel's question regarding whether Inspector Lacelle had seen Cabrera pass through the Port of Entry prior to September 21, 1998. Inspector Lacelle responded: "That is correct, we have even searched his vehicle on several occasions."

■ Cabrera's counsel did not move to strike Inspector Lacelle's response. Cabrera did not, therefore, preserve this issue for appeal. *See* FED. R. EVID.

103(a)(1) (error may not be predicated upon a ruling which admits evidence unless "a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context."). Furthermore, any possible error resulting from Inspector Lacelle's testimony was invited by defense counsel's question. *See United States v. Schaff*, 948 F.2d 501, 506 (9th Cir.1991) ("[A]n error that is caused by the actions of the complaining party will cause reversal only in the most exceptional situation .... [where] reversal is necessary to preserve the integrity of the judicial process or to prevent a miscarriage of justice.") (internal quotations and citations omitted).

## III

■ Cabrera also contends that the prosecutor engaged in reversible misconduct during his opening statement and closing argument. First, Cabrera argues that the following comment by the prosecutor in his opening statement was misconduct:

Members of the jury, the evidence in this case is going to take you into the world of smuggling, deceit and greed that exists on our borders to the south. This is a smuggling case. Usually when you think of smuggling, you think of the transportation or importation of some sort of illegal goods, contraband of some sort. In this case, the defendant, ... was not dealing in weapons or drugs or exotic animals. The defendant trafficked in human beings.

Cabrera contends that the statement was misconduct because the government did not offer evidence at trial establishing that Cabrera had smuggled weapons, drugs or exotic animals. He argues that the statement prejudiced him because it associated him with the crimes of smuggling weapons, drugs, and exotic animals, with which he had not been charged.

The prosecutor's opening remarks did not amount to misconduct. The prosecutor did not state either expressly or implicitly that Cabrera smuggled anything other than humans. *See Etsitty*, 130 F.3d at 424 (finding no misconduct because, "[b]ased on the transcript, we have no reason to believe that the prosecutor intended to mislead the jury....").

■ Cabrera next asserts that the prosecutor committed misconduct, and improperly shifted the burden of proof to Cabrera, by commenting in his closing argument on Cabrera's failure to produce evidence corroborating his testimony. Discussing Cabrera's credibility as a witness, the prosecutor stated:

Now, I am not saying he has—that the burden is ever shifted to him. The Government has the burden of proving this case, but in evaluating his testimony, you can go through his motivation, you can go through his perceptions, the same things that you have to look at all of the witnesses that testify in our case should be applied to him as well.

The prosecutor reminded the jury that, "again, he doesn't have the burden of proof." He then stated: "I ask you to evaluate his testimony. Has that been corroborated? Have you heard from his wife that he called the other night? In evaluating his testimony you can evaluate those things." The prosecutor also asked, "Does his friend come in and corroborate his testimony? Didn't hear from him. Did you hear about—did Armando come in and tell you that he was giving [Cabrera] a favor—or he asked him to do a favor for [Cabrera]?" Finally, during his rebuttal argument, the prosecutor reiterated that:

The Government has never shifted the burden to the defendant. The Government accepts its burden of proving the case beyond a reasonable doubt ... The Government never asked you to speculate. What we did is ask you to draw inferences based on the evidence ... The Government has never asked the defendant to prove his innocence. In asking about the corroboration, simply we were pointing out—I was pointing out that there could have been corroboration for his story.

The prosecutor's comments did not shift the burden of proof or persuasion. A prosecutor's comment on a defendant's failure to call a witness does not shift the burden of proof, and is therefore permissible, so long as the prosecutor does not violate the defendant's Fifth Amendment rights by commenting on the defendant's failure to testify. *See United States v. Williams*, 990 F.2d 507, 510 (9th Cir.1993); *see also United States v. Vaandering*, 50 F.3d 696, 701–02 (9th Cir.1995) (holding that a prosecutor's comments highlighting the weaknesses in the defendant's case did not shift the burden of proof because the prosecutor did not comment on the defendant's failure to testify, and expressly told the jury that the government bore the burden of proof) (citing *United States v. Mares*, 940 F.2d 455, 461 (9th Cir.1991)).

Here, Cabrera's Fifth Amendment rights were not implicated because he chose to testify in his own defense. Furthermore, the prosecutor reminded the jury repeatedly that the government bore the burden of proof, and that Cabrera was not required to call witnesses. The prosecutor's statements were not misconduct.

Cabrera also finds fault with the prosecutor's statement during closing argument: "How do we know that he acted or knew that these people were here illegally ... The whole set up. His driving the car, didn't have the right plates on it. Maybe he was trying to conceal his identity. Think about that as you are back deliberating." Cabrera claims that this statement suggested that the government's position was supported by information not introduced into evidence, and therefore, shifted the burden to Cabrera.

The prosecutor's statement was based on evidence submitted at trial. Evidence was presented that the car that Cabrera was driving displayed a license plate registered to a motor home, not the car that he was driving. The prosecutor's statement simply asked the jury to draw the reasonable inference that Cabrera was using the false license plate for the purpose of concealment. "It is not misconduct for the prosecutor to argue reasonable inferences based on the record." *United States v. Atcheson*, 94 F.3d 1237, 1244 (9th Cir.1996) (citation omitted). Thus, the statement in this case did not amount to prosecutorial misconduct.

Finally, Cabrera contends that the prosecutor committed misconduct by implying during his closing argument that Cabrera was not an honest witness. During closing argument, the prosecutor stated, "[Cabrera] has had from the time he was arrested in September, he had all of that time to think about what he is going to tell you." Cabrera argues that this statement improperly shifted the burden of proof.

A prosecutor may express doubt about the veracity of a witness's testimony. *See United States v. Birges*, 723 F.2d 666, 672 (9th Cir.1984) ("It is neither unusual nor improper for a prosecutor to voice doubt about the veracity of a defendant who has taken the stand."). A prosecutor may even go so far as to label a defendant's testimony a "fabrication." *See id.* None of the prosecutor's comments shifted the burden of proof or persuasion.

Cabrera's convictions are therefore AFFIRMED.