

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-11-2007

# USA v. Magloire

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-2242

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"USA v. Magloire" (2007). *2007 Decisions.* Paper 1322.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1322

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 06-2242

UNITED STATES OF AMERICA

v.

CARTER MAGLOIRE,
Appellant

Appeal from the District Court of the Virgin Islands,
Division of St. Croix
(No. 04-cr-00142-2)
District Court: Hon. Anne E. Thompson

Submitted Pursuant to Third Circuit LAR 34.1(a)
December 4, 2006

Before: McKEE, BARRY, and STAPLETON Circuit Judges

Opinion filed: April 11, 2007

OPINION

McKEE, Circuit Judge.

Carter Magloire appeals the district court's judgments of conviction and sentence.

He claims the court erred in failing to grant his motion for recusal, that the evidence was

insufficient to sustain his convictions, and that his trial counsel was ineffective. For the

reasons that follow, we will affirm.

I.

Because we write primarily for the parties, we need not recite the facts or

procedural background of this case except insofar as may be helpful to our brief discussion. However, since Magloire challenges the sufficiency of the evidence, we will begin our discussion with a brief overview of the testimony.

During the trial, four Haitians testified: (1) they were Haitian nationals without proper documentation to enter the United States; (2) they were attempting to enter the United States through the Virgin Islands and/or the continental United States; and (3) they paid to be transported from Dominica to the Virgin Islands. Three of the witnesses paid $1,000 to board the ship; one paid $1,200. They traveled by boat to St. Croix from Dominica, and no one asked them to show proper documentation to enter the United States before or after they boarded the boat. They left Dominica at night in a small boat that took them to the larger boat that eventually ran aground in St. Croix. They observed only Magloire and co-defendant Laville operating the boat during the three-day voyage. Two witnesses testified that they paid their money to the boat owner directly, and that the owner knew they were Haitian nationals. Another witness testified that the boat's owner told the passengers that Magloire and Laville would be taking the boat to the Virgin Islands.

The evidence also included the deposition testimony of four Cuban passengers that was very similar to the Haitians' testimony. The Cuban nationals did not have any documentation authorizing their entry into the United States. They paid a contact in Dominica $3,000 to be transported to the United States. That contact knew they were

2

Cuban. They said they left Dominica around 1 or 2 a.m., and were taken to a larger boat that transported them to the Virgin Islands. However, unlike the Haitians, the Cubans did not know who operated the boat.

David Levering, a special agent at Immigration and Customs Enforcement with experience investigating alien smuggling in the Virgin Islands, also testified. He stated that alien smuggling operations typically begin at staging locations like Dominica or St. Martin, where aliens pay organizers to be taken to the Virgin Islands. He also testified that the boat operators are invariably paid for their services.

The jury acquitted Magloire of conspiracy to bring in illegal aliens, but convicted him of bringing aliens into the United States, and doing so for financial gain. Thereafter, Magloire filed a counseled motion for new trial pursuant to Fed. R. Crim. P. 33. His arguments included a claim that Judge Gómez should have recused himself because he had been Deputy Criminal Chief in the Office of the United States Attorney for the District of the Virgin Islands when Magloire was arrested, and he remained Deputy Chief during the ensuing investigation and indictment. Magloire also challenged the sufficiency of the evidence.

Thereafter, he filed a *pro se* motion pursuant to Fed. Civ. P. 60(b), arguing ineffective assistance of counsel. At the ensuing sentencing hearing, Judge Anne E. Thompson denied Magloire's motion for a new trial and refused to address Magloire's ineffective assistance of counsel claims. This appeal followed.

Section 455(a) of Title 28 of the United States Code provides: "Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). Section 455(b)(3) requires disqualification "[w]here [the judge] has served in governmental employment and in such capacity participated as counsel, adviser or material witness concerning the proceeding or expressed an opinion concerning the merits of the particular case in controversy." 28 U.S.C. § 455(b)(3).

Magloire first contends that it was improper for Judge Thompson to rule on his recusal motion. He highlights the statutory mandate that a judge "*disqualify himself . . . [when] his impartiality might reasonably be questioned.*" § 455(a) (emphasis added); *see United States v. Balistrieri*, 779 F.2d 1191, 1202-03 (7th Cir. 1985) ("Section 455 clearly contemplates that decisions with respect to disqualification should be made by the judge sitting in the case, and not by another judge."). The Government argues that, because Magloire first questioned Judge Gómez's impartiality in a post-trial motion for a new trial, rather than in a motion for recusal, it was proper for Judge Thompson to rule on the issue of recusal.

The Government's argument sidesteps the self-executing nature of § 455. That section "imposes a duty on the judge to act *sua sponte*, even if no motion . . . is filed." *Balistrieri*, 779 F.2d at 1202; *see also In re Antar*, 71 F.3d 97, 101 (3d Cir. 1995)

4

("Section 455(a) imposes a general duty on a federal judge to recuse *whenever* there is an appearance of judicial partiality.") (emphasis added).

In *Selkridge v. United of Omaha Life Ins. Co.*, 360 F.3d 155 (3d Cir. 2004), we stated: "'as in other areas of the law, there is room for harmless error' in § 455(a) analysis." *Id.* at 171 (quoting *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 862 (1988)). Thus, Judge Thompson's ruling and Judge Gómez's failure to recuse are subject to harmless error review. Given this record, even if we assume, *arguendo*, that Judge Gómez should have recused himself, the error would be harmless. Where, as here, a claim that the trial judge should have recused himself/herself is not made until after trial, we require the claim to "be supported by substantial justification." *Martin v. Monumental Life Ins. Co.*, 240 F.3d 223, 237 (3d Cir. 2001).

The dearth of facts Magloire asserts to support his recusal argument falls woefully short of the "more compelling standard for recusal under § 455(a) after the conclusion of a trial." *Id.* Magloire points out that Judge Gómez was Deputy Criminal Chief in the United States Attorney's Office for the District of the Virgin Islands during the pretrial stages of his prosecution. However, standing alone, the fact that Judge Gómez was one of several Assistant United States Attorneys in the office that prosecuted Magloire would not cause a reasonable and informed observer to question his impartiality. Apart from Judge Gómez's tenure as an Assistant United States Attorney, Magloire offers little to establish that "a reasonable person knowing all the circumstances would harbor doubts

5

concerning the judge's impartiality." *United States v. Di Pasquale*, 864 F.2d 271, 279 (3d Cir. 1988) (quotation omitted).

Unable to buttress his contention with an extrajudicial source of bias, Magloire challenges Judge Gómez's impartiality on the basis of a ruling that Magloire claims allowed hearsay testimony to be admitted during trial. However, "judicial rulings alone almost never constitute a valid basis for a . . . partiality motion. . . . [T]hey . . . can only in the rarest circumstances evidence the degree of favoritism or antagonism required . . . when no extrajudicial source is involved." *Liteky v. United States*, 510 U.S. 540, 555 (1994). Judge Gómez's ruling on the evidentiary question evidences no favoritism or antagonism toward Magloire. It is not, therefore, a basis for recusal.

Moreover, the challenged ruling on Magloire's belated hearsay objection does not advance his claim for relief on appeal. During cross-examination, defense counsel asked one of the alien passengers whether Magloire "introduce[d] himself to [the witness] as the captain" of the boat. The witness responded that when the boat owner came on board with her, he told her that Magloire and Laville "would be controlling the boat." Defense counsel did not immediately move to strike the testimony on hearsay grounds. Instead, defense counsel asked the witness follow-up questions related to this alleged hearsay statement. The follow-up questions themselves consume more than five pages of transcript. Only after the parties returned from the lunch recess did defense counsel first move to strike this testimony on hearsay grounds. In response, Judge Gómez noted that

6

defense counsel had "asked a series of questions [and] elicited the [challenged] testimony." Judge Gómez subsequently denied the motion in open court, stating that it would not be "appropriate" to strike "information that [defense counsel] elicited during . . . cross-examination." Because defense counsel first raised the subject of who, if anyone, was identified as being in charge of the boat on the night in question and because defense counsel continued to elicit information on that subject after securing the initial response, we believe the district court was well within its discretion in rejecting Magloire's belated motion to strike.[1] *See, e.g., United States v. Parikh*, 858 F.2d 688, 695 (11th Cir. 1988) ("We hold that the admission of out of court statements by a government witness, when responding to an inquiry by defense counsel, creates 'invited error.'"); *United States v. Cabera*, 201 F.3d 1243, 1248-49 (9th Cir. 2000); *United States v. Driver*, 242 F.3d 767, 770 (7th Cir. 2001) ("If . . . defense counsel elicits testimony at trial, the defendant can't argue on appeal that the evidence was hearsay and should have been excluded.").[2]

---

[1]For the same reason, we reject Magloire's argument that admission of the challenged hearsay statement violated his rights under the Confrontation Clause. *See Parikh*, 858 F.2d at 695-96 (no Confrontation Clause violation where defense counsel elicits hearsay statement from government witness).

[2]Even if the statement Magloire complains of had not been elicited by defense counsel, the district court might well have found it admissible as the statement of a co-conspirator under Fed. R. Evid. 801(d)(2)(E). That Rule provides:"a statement by a coconspirator of a party during the course and in furtherance of the conspiracy" is not hearsay. Here, the statement was made during the course of an alien smuggling scheme in which Magloire played an important role as transporter. Additionally, the statement was made by the boat's owner, who collected money for the voyage, provided the means to transport the aliens, and also played a central role in the scheme. Moreover, the statement can be viewed as made in furtherance of the conspiracy to smuggle aliens

7

Magloire's argument that § 455(b)(3) required recusal also fails because Magloire has not presented anything to show that Judge Gómez acted as counsel or advised others with respect to his prosecution. Nor has Magloire asserted any facts suggesting that Judge Gómez expressed an opinion concerning the merits of Magloire's prosecution while in the United States Attorney's Office. We, therefore, conclude that his belated recusal argument is meritless.

**III.**

Magloire's claim that the evidence was insufficient fares no better. Section 1324(a)(1)(A)(I) of Title 8 of the United States Code provides:

> Any person who—knowing that a person is an alien, brings to or attempts to bring to the United States in any manner whatsoever such person at a place other than a designated port of entry or place other than as designated by the Commissioner, regardless of whether such alien has received prior official authorization to come to, enter, or reside in the United States and regardless of any future official action which may be taken with respect to such alien . . . shall be punished as provided in subparagraph (B).

Therefore, § 1324(a)(1)(A)(I) required the Government to establish: (1) that Magloire

---

because the statement informed the passengers who would be transporting them to the Virgin Islands, possibly allaying some of their fears and giving them a sense of security in their investment.

Magloire's acquittal on the conspiracy charge would not have precluded admission of the statement under Rule 801(d)(2)(E). "Generally, the trial judge makes a finding that the government has shown the conspiracy's existence by a preponderance of the evidence before the statement is admitted." *United States v. De Peri*, 778 F.2d 963, 981 (3d Cir. 1985). Accordingly, the jury's eventual conclusion that the Government failed to establish the conspiracy beyond a reasonable doubt has no bearing on the statement's admissibility.

brought or attempted to bring into the United States; (2) an alien; (3) knowing that the person was an alien; and (4) did so at a place other than a designated port of entry.

Section 1324(a)(2)(B)(ii) of Title 8 of the United States Code provides:

> Any person who, knowing or in reckless disregard of the fact that an alien has not received prior official authorization to come to, enter, or reside in the United States, brings to or attempts to bring to the United States in any manner whatsoever, such alien, regardless of any official action which may later be taken with respect to such alien shall, for each alien in respect to whom a violation of this paragraph occurs . . . in the case of—an offense done for the purpose of commercial advantage or private financial gain . . . be fined under Title 18 and shall be imprisoned. . . .

Thus, § 1324(a)(2)(B(ii) required the Government to establish that (1) Magloire brought or attempted to bring; (2) an alien; (3) knowing or recklessly disregarding the fact that the alien had not received official permission to enter; and (4) did so for financial gain.

"In reviewing a jury verdict for sufficiency of the evidence, we must consider the evidence in the light most favorable to the [G]overnment and affirm the judgment if there is substantial evidence from which any rational trier of fact could find guilt beyond a reasonable doubt." *United States v. Brown*, 3 F.3d 673, 680 (3d Cir.1993) (citation and internal quotations omitted). Accordingly, "[a] defendant challenging the sufficiency of the evidence bears a heavy burden," *United States v. Casper*, 956 F.2d 416, 421 (3d Cir.1992) (citations omitted), in trying to overturn a verdict.

The evidence we have summarized above is clearly sufficient to establish Magloire's guilt under both statutes. Magloire directs us to *United States v. Nguyen*, 73

9

F.3d 887 (9th Cir. 1995) and *United States v. Barajas-Montiel*, 185 F.3d 947 (9th Cir. 1999), in urging us to construe sections 1324(a)(1)(A)(i) and 1324(a)(2)(B)(ii) as requiring a specific criminal intent to violate the immigration law. However, we need not decide whether those sections have that *mens rea* requirement because the record here would allow a reasonable jury to find all the elements beyond a reasonable doubt even if we were to require specific intent to violate the immigration law. Specifically, the aliens were first loaded on a small boat that left harbor under cover of darkness or in the early morning hours. They were then transported to a larger boat that brought them to the Virgin Islands at a location that was neither intended nor designed as a port of entry, but which did minimize the chance that they would encounter immigration authorities. This certainly suggests something other than the typical Caribbean cruise. A jury could certainly conclude that this procedure was used to minimize the likelihood of detection by authorities. Indeed, we can think of no other explanation for the time or method of departure. Accordingly, there is enough here to establish Magloire's criminal intent even if we conclude that element is required for conviction.

Magloire argues the evidence supports his contention that he was merely a passenger on the boat, like the other thirty-two aliens apprehended by Virgin Islands Police Department, and that the record does not support the conclusion that he brought them into the United States. However, as noted at the outset, the Government's evidence established that Magloire and Laville were the only two people who operated the boat

10

during its sojourn from Dominica to the Virgin Islands, and that the owner of the boat introduced Magloire as one of the boat's two "operators." Furthermore, Magloire was in possession of a GPS when apprehended. That is consistent with testimony that he was an operator; a passenger would not need a satellite navigating device. The Government's evidence also established that the boat carried Haitian, Cuban, Dominican, and Brazilian nationals who paid to enter the United States illegally. Moreover, the boat ran aground in a channel that did not lead to the Gallows Bay dock—the designated port of entry for vessels arriving in Christiansted. Based on the foregoing, a rational juror could infer that Magloire brought illegal aliens to the United States at a place other than a designated port of entry; indeed, the juror would be hard pressed to conclude anything else. Moreover, when viewed in the light most favorable to the Government, the evidence also established that Magloire knew the passengers were aliens.

Magloire further contends that the Government's evidence failed to establish that he brought aliens to the United States for financial gain. We have already summarized the evidence that undermines that claim. We need only reiterate the testimony that alien smuggling operations usually begin at holding locations, like Dominica, and that the individuals who operate boats transporting aliens are compensated for their efforts. Insofar as 8 U.S.C. § 1324(a)(2)(B)(ii) "does not require evidence of an actual payment or even an agreement to pay," *United States v. Angwin*, 271 F.3d 786, 805 (9th Cir. 2001), a rational juror could infer that Magloire knew or acted in reckless disregard of the fact that

11

the aliens he transported lacked official permission to enter the United States, and that he had been, or would be, compensated with a portion of the money that the aliens paid to be transported to the United States.

Finally, Magloire argues that his trial counsel was ineffective for several reasons. However, "claims of ineffective assistance of counsel are ordinarily not cognizable on direct appeal." *United States v. Tobin*, 155 F.3d 636, 643 (3d Cir. 1998). "The proper mechanism for challenging the efficacy of counsel is through a motion pursuant to 28 U.S.C. § 2255." *Id.* It is not, therefore, appropriate for us to address that issue now.

IV.