**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 07-10446 |
| Plaintiff - Appellee, | D.C. No. CR-05-00040-KJD |
| v. | |
| MARIO WEICKS, | MEMORANDUM[*] |
| Defendant - Appellant. | |

Appeal from the United States District Court
for the District of Nevada
Kent J. Dawson, District Judge, Presiding

Argued and Submitted November 2, 2009
San Francisco, California

Before: HAWKINS and THOMAS, Circuit Judges, and KORMAN,[**] District
Judge.

Appellant, Mario Weicks, appeals his conviction of two counts of transporting

---

[*]     This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

[**]     The Honorable Edward R. Korman, Senior United States District
Judge for the Eastern District of New York, sitting by designation.

1

a minor with intent that she engage in prostitution, 18 U.S.C. § 2423(a), two counts

of traveling in interstate commerce for the purpose of engaging in sex with a minor,

18 U.S.C. § 2423(b), one count of possessing a firearm as a convicted felon, 18 U.S.C.

§ 922(g)(1), and one count of possessing a firearm in furtherance of a crime of

violence, 18 U.S.C. § 924(c). He was sentenced to 420 months imprisonment plus ten

years of supervised release. We affirm Weicks' conviction but remand to the district

court for resentencing.

I

Under U.S. Sentencing Guidelines ("Guidelines") § 4B1.1, a defendant is

treated as a career offender if, among other things, "the defendant has at least two

prior felony convictions of either a crime of violence or a controlled substance

offense." U.S. Sentencing Guidelines § 4B1.1 (2005). Here, the district court applied

the career offender provision, which mandated a Guidelines sentencing range of 360

months to life because one of Weicks' convictions was for violation of 18 U.S.C.

§ 924(c). Absent application of the career offender provision, Weicks' Guidelines

offense level would be 30, which would result in a Guidelines sentencing range of 168

to 210 months. The only issue on appeal relating to the career offender sentencing

enhancement is whether his prior conviction for third-degree assault constitutes a

"crime of violence." The Guidelines define a crime of violence as any offense that,

2

*inter alia*, "has as an element the use, attempted use or threatened use of physical force against the person of another, or is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another." U.S. Sentencing Guidelines § 4B1.2 (2005).

In *United States v. Sandoval*, 390 F.3d 1077 (9th Cir. 2004), we held that "[u]nder the categorical approach set forth in [*Taylor v. United States*, 495 U.S. 575 (1990)], third-degree assault in Washington does not qualify as a crime of violence as that term is defined in United States Sentencing Guideline § 4B1.2," because it is possible to commit the offense through an unlawful touching that does not involve substantial physical force or the serious risk of physical injury. *Id.* at 1081; *see also State v. Hall*, 14 P.3d 884, 889 (Wash. Ct. App. 2000). Consequently, we held that third-degree assault is not categorically a crime of violence. *Sandoval*, 390 F.3d at 1081; *see also James v. United States*, 550 U.S. 192, 208-09 (2007); *Gonzalez v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007) ("[T]o find that a state statute creates a crime outside the generic definition of a listed crime . . . requires a realistic probability . . . that the State would apply its statute to conduct that falls outside the generic definition of a crime").

Moreover, after examining "the information, plea agreement, and judgment in the record," we concluded that they "do not exclude the possibility that Sandoval's guilty plea to third-degree assault was for conduct that did not involve substantial physical force and did not seriously risk physical injury." *Id.* Accordingly, the prior guilty plea "did not constitute a crime of violence under either the categorical or the modified categorical approach, and [thus] Sandoval's sentence was improperly enhanced." *Id.*; *see also United States v. Young*, 420 F.3d 915, 917-18 (9th Cir. 2005).

The information to which Weicks pled guilty in Washington says nothing about the conduct underlying the offense. Nor does the plea agreement, pursuant to which Weicks entered an *Alford* plea, contain any adequate factual recitations. While the plea proceeding provides some additional information involving Weicks' conduct in the Washington case, the facts to which Weicks admitted were insufficient to satisfy the modified categorical approach.

On the assumption that Weicks' attorney's statement regarding the incident could be imputed to Weicks himself, it merely constitutes argument based on facts that were contained in the police report, namely that the arresting officer *reported* that Weicks "slapped her wrist," and that the police report, but not the probable cause affidavit, indicated he "apparently had shoved himself or his arm back while . . .

4

continuing to be arrested and apparently the officer was struck again at . . . that time." Nevertheless, the district court could not consider the police report when applying the modified categorical approach. *Shepard v. United States*, 544 U.S. at 21-23. Under these circumstances, it necessarily follows that argument by Weicks' lawyer based upon the police report was likewise inadequate to satisfy the modified categorical approach. Consequently, we need not reach the issue whether Weicks' conduct, as described in the police report, constitutes a crime of violence.

II

Weicks makes two arguments with respect to his conviction under 18 U.S.C. § 924(c), for use of a firearm in furtherance of a crime of violence. Both are without merit. Section 924(c) provides that "any person who, during and in relation to any crime of violence . . . uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall . . . be sentenced to a term of imprisonment of not less than 5 years." 18 U.S.C. § 924(c). We have held that 18 U.S.C. § 2423(a), which makes it a crime to transport a minor across state lines with the intent that she engage in prostitution, creates a substantial risk that violence may be used to perpetrate the crime. *See United States v. Carter*, 266 F.3d 1089, 1091 (9th Cir. 2001). Specifically, we held that, because prostitution "carried the risk of assault or physical abuse by the pimp's customers or by the pimp himself," it was a crime of violence encompassed by

5

the Guidelines § 4B1.2. *Id.* at 1090-91; *cf. United States v. Patterson*, 576 F.3d 431, 440-42 (7th Cir. 2009); *United States v. Williams*, 529 F.3d 1, 5-7 (1st Cir. 2008).

Weicks argues that these cases are inapposite because the definition of a crime of violence under § 4B1.2(a)(2) of the Guidelines is different than that found in § 924(c). While the Guidelines define a crime of violence as involving "a serious potential risk of physical injury to another," U.S. Sentencing Guidelines § 4B1.2(a)(2), § 924(c) requires "a substantial risk that *physical force* against the person or property may be used." 18 U.S.C. § 924(c) (emphasis added). In *Valencia v. Gonzales*, we found statutory rape to be a crime of violence, distinguishing between "substantial risk of physical force" and "serious potential risk of physical injury," and concluding that while consent to sexual intercourse renders force unnecessary to overcome a minor's resistance, "actual consent . . . [does] not remove the potential risk of physical injury [due to sexually transmitted disease]." 439 F.3d 1046, 1053 (9th Cir. 2006).

Unlike the crime of statutory rape, the minor's consent to engage in prostitution does not alleviate the substantial risk that physical force will be used against the minor by both the pimp and third party "customers," as described in *Carter*. 266 F.3d at 1091; s*ee also Williams*, 529 F.3d at 5-7 (noting that the commercial aspect of 18 U.S.C. § 2423(a), as opposed to simple seduction of a minor, increases the level of

6

risk to the minor because it increases the risk of physical abuse from multiple partners); *accord* Sylvia A. Law, *Commercial Sex: Beyond Decriminalization,* 73 S. Cal. L. Rev. 523, 533 n.47 (2000) (noting a "study of 130 street prostitutes in San Fransisco found that 82% had been physically assaulted, 83% had been threatened with a weapon, [and] 68% had been raped while working as prostitutes"). Thus, the act of transporting a minor with the intent that she engage in prostitution is a proper predicate for Weicks' 924(c) conviction.

Weicks also challenges his conviction under § 924(c) on the ground that the firearm, which the evidence established he possessed, was not used "in furtherance" of a crime of violence. Here, the victim testified at trial that, prior to their first trip to Las Vegas, Weicks showed her a gun, claiming that it was for her "protection." The victim further testified that Weicks said he planned to take the gun with them to Las Vegas "in case anybody would hurt" her. Weicks' statement that he intended to use the gun to protect the victim itself provides a sufficient basis for the jury to have found that Weicks possessed the gun with a purpose to "promote or facilitate the underlying crime" of having the victim to prostitute herself for his benefit. *United States v. Krouse*, 370 F.3d 965, 967 (9th Cir. 2004).

III

Weicks makes two arguments with respect to the sufficiency of the evidence related to the 18 U.S.C. § 2423(b) (illicit sexual conduct) charges. First, he argues that with respect to Weicks' second trip to Las Vegas with the victim, the evidence was insufficient to establish that the sexual conduct with the victim occurred after Weicks crossed state lines. Weicks also argues that the government had not proven that there was a sufficient nexus between interstate travel and the criminal sex act. Our review of the record reveals that Weicks' arguments lack merit. *United States v. Fox*, 425 F.2d 996, 999 (9th Cir. 1970).

IV

Weicks contends that the district court should not have admitted evidence of his 1994 felony conviction for distributing a controlled substance, 1996 third-degree felony conviction for assault on a police officer, 1998 misdemeanor conviction for providing false identification to a police officer, a bench warrant resulting from his failure to appear to face charges related to this case, and two prior arrests for illegal possession of a firearm. Because, Weicks volunteered testimony regarding each of these crimes during his direct examination, he may not challenge their admission on appeal. *See United States v. Ohler*, 529 U.S. 753, 755 (2000); *see also United States v. Williams*, 939 F.2d 721, 725 (9th Cir. 1991).

Second, the introduction of a bench warrant for Weicks' failure to appear and face state charges related to this case was properly allowed by the district court as relevant evidence of flight. *See Marcoux v. United States*, 405 F.2d 719, 721 (9th Cir. 1968); *see also United States v. Greiser*, 502 F.2d 1295, 1299 (9th Cir. 1974). The state charges filed against Weicks arise out of the same course of conduct for which Weicks was on trial in federal court. Accordingly, the issuance of a bench warrant for Weicks' failure to appear in state court was probative of his guilt regarding that course of conduct and therefore relevant evidence to this case.

Third, Weicks' prior arrests for illegal possession of firearms were admissible because Weicks opened the door for questioning on the matter while testifying. When asked during cross examination whether he knew that a convicted felon is prohibited from carrying a firearm, Weicks responded with broad statements indicating that he did not possess a gun and portrayed himself as someone who avoided being around firearms. In response, the government sought to introduce Weicks' two prior arrests for being a felon in possession of a firearm for the sole purpose of impeaching Weicks' volunteered statements. Federal Rule of Evidence 607 allows the admission of extrinsic evidence to impeach specific errors or falsehoods in a witness' volunteered testimony. *See United States v. Castillo*, 181 F.3d 1129, 1132-34 (9th Cir. 1999) (holding that defendant's broad denials of drug involvement warranted admission of

extrinsic evidence of his prior arrest for cocaine possession); *but see Michelson v. United States*, 335 U.S. 469, 482 (1948) (stating that a prior arrest, without more, "does not, in law any more than in reason, impeach the integrity or impair the credibility of a witness"); *United States v. Pennix*, 313 F.2d 524, 529 (4th Cir. 1963) (noting that probative value of prior arrest is "overwhelmingly outweighed by its inevitable tendency to inflame and prejudice the jury against the defendant").

Moreover, any error regarding the admissibility of the arrests is harmless because the evidence of Weicks' mere arrests was unlikely to have affected the jury's decision to discredit his testimony. *See United States v. Angwin*, 271 F.3d 786, 798 (9th Cir. 2001) (overruled on other grounds by *United States v. Lopez*, 484 F.3d 1186, 1200 n.17 (9th Cir. 2007).

V

The district court's exclusion of the victim's prior conviction for petty larceny was proper under Federal Rule of Evidence 609(a). *See United States v. Glenn*, 667 F.2d 1269, 1273 (9th Cir. 1982) ("[T]heft crimes … do not involve dishonesty or false statement within the meaning of rule 609(a)(2)") (internal quotations omitted); *cf. United States v. Ortega*, 561 F.2d 803, 806 (9th Cir. 1977) ("An absence of respect for the property of others is an undesirable character trait, but it is not an indicium of

a propensity toward testimonial dishonesty"). Moreover, even if the evidence could have been used for purposes of impeachment, during the course of the trial, the jury heard substantial evidence which rendered that line of questioning cumulative.

VI

Weicks contends that he is entitled to a new trial because the government improperly commented on his silence and shifted the burden of proof to Weicks during its closing argument in violation of the Fifth Amendment. Weicks cannot claim that the prosecutor improperly commented on his failure to testify, because Weicks did in fact testify on his own behalf. *See United States v. Cabrera*, 201 F.3d 1243, 1250 (9th Cir. 2000). Moreover, we held in *Cabrera* that a prosecutor is permitted to comment on the weakness of the defendant's case. *Id.*; *see also United States v. Vaandering*, 50 F.3d 696, 701-02 (9th Cir. 1995) (prosecutor may comment on the defendant's failure to present exculpatory evidence, provided the comments do not call attention to the defendant's failure to testify). The comments here are analogous. The prosecutor reminded the jury that the government had the burden of proof and stated that Weicks failed to provide exculpatory evidence to corroborate his testimony.

VII

Weicks contends that the district court erroneously held that there was probable cause to arrest him and that "the arrest and the evidence obtained thereby in violation of Mr. Weicks' Fourth Amendment and Fourteenth Amendment rights must be suppressed." After examining the record in this case, we conclude that there was probable cause for Weicks' arrest based on the corroborated information provided by the victim and Weicks' inconsistent and contradictory statements and behavior.

VIII

Weicks contends that the district court improperly considered the fact of Weicks' prior convictions when imposing sentence. Under *Almendarez-Torres v. United States*, 523 U.S. 224 (1998), the district court properly considered Weicks' prior convictions during sentencing.

CONCLUSION

Based on the foregoing, we affirm the judgment of conviction and remand for resentencing.

**AFFIRMED in Part; VACATED and REMANDED in Part.**