## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 08 2017, 7:49 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Kevin Wild
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

George P. Sherman
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| David Lee, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff* | August 8, 2017 <br><br> Court of Appeals Case No. 49A02-1610-CR-2414 <br><br> Appeal from the Marion Superior Court <br><br> The Honorable Kurt Eisgruber, Judge <br><br> Trial Court Cause No. 49G01-1601-F4-2819 |

**Altice, Judge.**

## Case Summary

[1] Following a jury trial, David Lee was convicted of child molesting as a Class C felony. Lee now appeals, presenting two issues for our review:

> 1. Did the trial court abuse its discretion in excluding a defense witness?

> 2. Did statements made by the State during closing argument constitute prosecutorial misconduct rising to the level of fundamental error?

[2] We affirm.

## Facts & Procedural History

[3] I.L. was born in 2003. When she was about four or five years old, Lee, her grandfather, began molesting her, and he continued to do so until she was eight or nine years old. When I.L. would stay overnight at Lee's apartment, Lee would direct I.L. to join him on the couch. Lee would lie on his side and would have I.L. lie on her side in front of him, with her back to his stomach. During these incidents, I.L. was clothed and Lee was wearing boxers or shorts and would cover himself with a blanket. Lee would position his body so that his penis was against I.L.'s buttocks and he would "hump" her. *Transcript Vol. 2* at 56. Lee's penis would get "hard" when this was occurring. *Id*. at 57. Lee also kissed I.L. and put his tongue in her mouth.

[4] In October 2015, I.L.'s mother caught I.L. sending sexual text messages to a boy. When I.L.'s mother confronted I.L. about the text messages, I.L. said she was sorry, fell down, and "started balling [sic]," a reaction I.L.'s mother found

to be unusual for I.L. *Id.* at 79. I.L. then told her mother about the incidents with Lee when she was younger. I.L.'s mother contacted the police and reported I.L.'s allegations against Lee.

[5]  On January 26, 2016, the State charged Lee with four counts of Class C felony child molesting and two counts of Level 4 felony child molesting. Prior to trial, the State moved to dismiss all but one of the Class C felony charges. A jury trial was scheduled for September 19, 2016. Prior to the start of the trial, the trial court granted the State's motion to dismiss and permitted the State to modify the language of the remaining charge.

[6]  At trial, after the State finished its presentation of evidence, Lee sought to call his daughter, Rachel, to testify in his defense. Rachel was not identified on any witness list prepared prior to trial and was present in the courtroom throughout the State's presentation of evidence. Counsel for Lee explained that he had only just learned of Rachel's potential testimony, which would have been to the effect that Rachel claimed she was present when I.L. made the allegations against Lee and that I.L. first made her allegations to her step-father and she "never fell down on the ground crying" like I.L.'s mother described. *Id.* at 101. The State objected to Rachel being called as a witness on two grounds—first, that Lee had not previously disclosed Rachel as a potential defense witness, and second, that Rachel had been in the courtroom during the trial despite an order for separation of witnesses. The trial court sustained the State's objection. Lee then took the stand in his own defense and testified as follows:

> Q.    [Lee], did you ever have inappropriate contact with IL?
>
> A.    No, I never.

*Id*. at 105.

[7]    During closing argument, the prosecutor argued, without objection, that Lee's testimony was not credible. Specifically, the prosecutor stated:

> He testified. He wasn't credible. He wasn't credible. "Did you touch your . . . granddaughter inappropriately?" "No." That's not credible testimony. You're telling me that you're testifying in your child molest daughter [sic] and that's all you have to say? That is not credible testimony.

*Id*. at 121. The jury found Lee guilty as charged. On September 30, 2016, the trial court sentenced Lee to six years, with two years suspended to probation. Additional facts will be provided as necessary.

## Discussion & Decision

### 1. Exclusion of Witness

[8]    Lee argues that the trial court abused its discretion in excluding Rachel as a defense witness for rebuttal purposes. He asserts that credibility of the State's witnesses was central to the case and thus Rachel's testimony was "very significant" because it would have "directly contested the[ir] credibility." *Appellant's Brief* at 13.

[9] We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Franciose v. Jones*, 907 N.E.2d 139, 144 (Ind. Ct. App. 2009), *trans. denied*. We will reverse a trial court's decision to admit or exclude evidence only if that decision is clearly against the logic and effect of the facts and circumstances before the court or the reasonable, probable, and actual deductions to be drawn therefrom. *Id*. Additionally, "[a] trial court is accorded broad discretion in ruling on issues of discovery, and a reviewing court will interfere only when a party can show an abuse of that discretion." *Morse v. Davis*, 965 N.E.2d 148, 160 (Ind. Ct. App. 2012), *trans. denied*.

[10] Lee does not dispute that Rachel was an undisclosed witness and that the State had already rested its case-in-chief when he indicated his intent to call her to testify. Giving due regard to a defendant's constitutional right to compulsory process, there is a strong presumption to allow even late-disclosed witnesses to testify. *Williams v. State*, 714 N.E.2d 644, 651 (Ind. 1999). In such cases, the preferred remedy is to grant a continuance to allow the State an opportunity to depose the witness and investigate the witness's story. *Cain v. State*, 955 N.E.2d 714, 718 (Ind. 2011). Nevertheless, "while the right to present witnesses is of the utmost importance, it is not absolute." *Townsend v. State*, 26 N.E.3d 619, 627 (Ind. Ct. App. 2015), *trans. denied*. "The accused, as is required by the State, must comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." *Jacobs v. State*, 22 N.E.3d 1286, 1288 (Ind. 2015).

[11] As both parties have identified, our Supreme Court has set forth five factors to consider in determining whether to exclude a witness:

> (i) when the parties first knew of the witness; (ii) the importance of the witness's testimony; (iii) the prejudice resulting to the opposing party; (iv) the appropriateness of lesser remedies such as continuances; and (v) whether the opposing party would be unduly surprised and prejudiced by the inclusion of the witness's testimony.

*Vasquez v. State*, 868 N.E.2d 473, 476 (Ind. 2007) (citing *Williams v. State*, 714 N.E.2d 644, 651 n.5 (Ind. 1999)).

[12] With regard to the first factor, Lee claims he did not know Rachel was a potential witness until after the State presented its case and she approached him with her version of events. The fact of the matter is, however, that Rachel is Lee's own daughter, who, after hearing I.L. and I.L.'s mother testify, now claims she can provide a different version of the circumstances surrounding I.L.'s disclosure of the allegations against Lee. With regard to the importance of Rachel's testimony, we note that while it might have cast doubt as to the credibility of I.L.'s mother's, Rachel's proposed testimony did not directly challenge I.L.'s credibility or her testimony regarding the molestations.

[13] Turning to the third factor, the State would clearly have been prejudiced in that the State was not afforded an opportunity to investigate Rachel's proposed testimony before presenting its evidence. Additionally, Rachel was present

throughout the trial and was privy to the testimony given by I.L. and I.L.'s mother before she came forward and indicated she had contrary testimony.[1]

[14] Similarly, with regard to the fourth factor, a continuance would not remedy the fact that Rachel had the opportunity to listen to the testimony of the State's witnesses and tailor her testimony accordingly. Even affording the State the opportunity to depose Rachel in the middle of trial would not have obviated the need for additional investigation. As noted by the State, if Rachel is over eighteen years of age, it would have been prudent to determine if she had any prior convictions to impeach her credibility. The State also notes that additional investigation might have yielded evidence that could have disputed Rachel's claim that she was present when I.L. first made her allegations against Lee. Essentially, the State asserts that if it had known of Rachel's proffered testimony prior to trial, such may have changed the manner in which the State presented its case. Finally, with regard to the fifth factor, there is no dispute that the State was surprised by Lee's request to have Rachel testify and such request came after the State had completed its case-in-chief.

[15] Considering each of these factors, we conclude that the trial court's decision to exclude Rachel as a defense witness was not an abuse of discretion. *See*

---

[1] The State argues that Rachel's presence in the courtroom while the State presented its evidence was a violation of the separation of witnesses order, the primary purpose of which is "to prevent witnesses from gaining knowledge from the testimony of other witnesses and adjusting their testimony accordingly." *See Morell v. State*, 933 N.E.2d 484, 489 (Ind. Ct. App. 2010). Rachel, however, was never listed as a witness, thus the separation of witnesses order did not apply to her.

*McDonald v. State*, 511 N.E.2d 1066 (Ind. 1987) (finding no abuse of discretion in trial court's exclusion of witness not listed as a potential witness where witness was present in court room).

[16] Furthermore, even if it was an abuse of discretion to exclude Rachel as a defense witness, any such error was harmless. Errors in the exclusion of evidence are generally to be disregarded as harmless unless they affect the substantial rights of the defendant. *Allen v. State*, 813 N.E.2d 349, 361 (Ind. Ct. App. 2004), *trans. denied*. "In determining whether an evidentiary ruling affected a party's substantial rights, the court assesses the probable impact of the evidence on the trier of fact." *Hyser v. State*, 996 N.E.2d 443, 448 (Ind. Ct. App. 2013).

[17] As noted above, Rachel's proposed testimony did not directly challenge I.L.'s testimony regarding the molestations, nor did it challenge I.L.'s mother's testimony that I.L. had disclosed Lee's molestations. Rather, Rachel's testimony could have, at most, challenged I.L's mother's testimony regarding I.L.'s demeanor at the time she disclosed the molestations. This was a collateral matter that would not have undermined I.L.'s testimony regarding the molestations. Lee has not established that exclusion of Rachel as a defense witness affected his substantial rights.

[18] Moreover, we note that Lee had the opportunity to challenge I.L.'s credibility by focusing on discrepancies between her prior statements and her testimony at trial as well as by focusing on the fact I.L. did not make the accusations against

Lee until she was in trouble for sending sexual text messages to a boy. Lee was not prejudiced by the trial court's exclusion of Rachel's testimony, which would have had little, if any, significance to I.L.'s testimony about the molestations. Accordingly, even if it was error to exclude Rachel's testimony, any such error would have been harmless.

## 2. Prosecutorial Misconduct

[19] Lee argues that the prosecutor committed misconduct during closing argument. Lee acknowledges that he did not object to the prosecutor's statements or request an admonishment at trial. To avoid waiver, he argues that the prosecutor's statements constitute fundamental error. *See Booher v.* State, 773 N.E.2d 814, 818 (Ind. 2002). "The 'fundamental error' exception is extremely narrow, and applies only when the error constitutes a blatant violation of basic principles, the harm or potential for harm is substantial, and the resulting error denies the defendant fundamental due process." *Mathews v. State*, 849 N.E.2d 578, 587 (Ind. 2006). This exception is available only in egregious circumstances. *Brown v. State*, 929 N.E.2d 204, 207 (Ind. 2010).

[20] To establish prosecutorial misconduct, we must "determine (1) whether the prosecutor engaged in misconduct, and if so, (2) whether the misconduct, under all of the circumstances, placed the defendant in a position of grave peril to which he or she would not have been subjected." *Booher*, 773 N.E.2d at 817 (quoting *Coleman v. State*, 750 N.E.2d 370, 374 (Ind. 2001)). The gravity of peril is measured by the probable persuasive effect of the misconduct on the jury's

decision rather than the degree of impropriety of the conduct. *Id*. For prosecutorial misconduct to constitute fundamental error, it must "make a fair trial impossible or constitute clearly blatant violations of basic and elementary principles of due process [and] present an undeniable and substantial potential for harm." *Benson v. State*, 762 N.E.2d 748, 756 (Ind. 2002).

[21] Lee challenges the prosecutor's statements during closing insofar as they concerned Lee's testimony. During the trial Lee took the stand and answered a single question:

> Q: David, did you ever have inappropriate contact with IL?

> A: No, I never.

*Transcript Vol. II* at 105. In closing, the prosecutor commented on Lee's testimony, stating:

> He testified. He wasn't credible. He wasn't credible. "Did you touch your . . . granddaughter inappropriately?" "No." That's not credible testimony. You're telling me that you're testifying in your child molest daughter (sic) and that's all you have to say? That is not credible testimony.

*Id*. at 121.

[22] In arguing that the prosecutor's statements were improper, Lee cites *Rowley v. State*, 259 Ind. 209, 213, 285 N.E.2d 646, 648 (1972), for the rule that "[a] comment made by a prosecuting attorney, directly or indirectly, which is subject to interpretation by a jury as a comment upon failure of a defendant to

testify has been strictly regarded as an impingement on the substantial right of the defendant." Lee acknowledges that he did not remain completely silent in that he took the stand and answered a single question. He nevertheless argues that it is misconduct for the prosecutor to draw attention to the fact that he had nothing more to say about the allegations in his defense and to equate such to a lack of credibility on his part.

[23] When a defendant does not take the stand in his own defense, the "Fifth Amendment privilege against self-incrimination is violated 'when a prosecutor makes a statement that is subject to reasonable interpretation by a jury as an invitation to draw an adverse inference from a defendant's silence.'" *Dumas v. State*, 803 N.E.2d 1113, 1118 (Ind. 2004) (quoting *Moore v. State*, 669 N.E.2d 733, 739 (Ind. 1996)). Here, however, Lee chose not to remain silent and testified in his own defense. Thus, the prosecutor's comments were not a comment on Lee's failure to take the stand and thus, did not violate his Fifth Amendment right not to testify. *See U.S. v. Miller*, 276 F.3d 370, 374 (7th Cir. 2002) (noting that because defendant testified, prosecutor's remarks did not violate defendant's Fifth Amendment right not to testify); *U.S. v. Cabrera*, 201 F.3d 1243, 1250 (9th Cir. 2000) (holding that defendant's "Fifth Amendment rights were not implicated because he chose to testify in his own defense"). Moreover, the challenged statements were comments directed at Lee's credibility, not his right not to testify. The prosecutor's comments do not constitute misconduct, let alone amount to fundamental error

[24] Judgment affirmed.

Kirsch, J. and Mathias, J., concur.